## DAVIS v. ÆTNA INS. CO.

Eastern Section. February —, 1932.

Petition for Certiorari denied by Supreme Court, May, 1932.

Brown & Brown, for complainant.

E. H. Powers, of Jacksboro, and Johnson & Cox, of Knoxville, for defendant.

SNODGRASS, J.   The chancellor's opinion disposing of the case is as follows:

"The complainant is seeking to recover from the defendant the sum of $500 plus twenty-five per cent. penalty for the loss of property which it is insisted was insured under a policy issued by defendant on November 1, 1924, and destroyed by fire the night of August 3, 1926.   Counsel for defendant insists that no proof of loss was furnished as required by the policy of insurance.   With reference to this contention I find that the fire occurred during the night of August 3d, perhaps just a little after midnight.   On September 1, 1926, H. F. Jennings, an adjuster for defendant, and a Mr. Huff, an adjuster for the Hartford Insurance Company which had issued a policy on some of the property destroyed in said fire, met in the office of W. B. Siler, a local insurance agent in Jellico, Tennessee, at which time the fire seems to have been fully discussed and what purported to be a proof of loss containing a list and the value of the property covered by the policy sued on and destroyed by said fire, and Mr. Jennings was furnished at said time the original or copy of same, which he helped to make out, or at least made suggestions as to what should go into said report.   He took the same, kept it, and asked for no further report, and made no complaint as to same and pointed out no defects.   Under these circumstances, I am of opinion that defendant cannot be heard to say that the proof of loss was insufficient.

"It is next insisted that the policy sued on covers a house and does not cover the property sued for.   In my opinion this contention is unsound.   The policy was intended to cover the contents of the barn destroyed as well as a dwelling house.   It was so understood and treated by both parties.

"It is contended that complainant in his evidence has testified to the loss of property not mentioned in the policy.   It is true that the complaint did show the loss of considerable property not covered by the policy but at the same time he shows that property of the value of more than $500 that was covered by the policy was destroyed.

"It is also insisted by defendant that there was no notice given to it of the fire as required by the policy.   Just how notice of this fire was conveyed to defendant the record does not show, but we do not deem this material, since evidently it learned of it in some way, sent its adjuster on the ground, and while there he made personal investigation and assisted in making out a list of the property destroyed.   A formal written notice could have served no purpose and defendant has not been prejudiced in any way on account of the failure to

give further notice than was given. Complainant was lured into the belief that nothing more in the way of proof of loss or notice would be required. On page 7 of his deposition the adjuster, Mr. Jennings, says that he took the matter of adjustment a few days after notice of the fire.

"What is called a nonwaiver agreement was entered into between complainant and defendant on September 1, 1926. The last paragraph thereof says that it was the intent to preserve the rights of all parties without regard to the liability of the parties of the second part, the intention of the agreement being to preserve the rights of the defendant. I do not think it can have more read into it. It had the right to waive a formal proof of loss and notice or to object to and point out such defects as it might conceive to be in such as may be furnished. It had this right both before and after the agreement was signed. The defendant through its adjuster went out and received without objection what complainant thought to be a satisfactory proof of loss and made no question at the time. It cannot ask now for more. The nonwaiver agreement did not present a waiver of subsequent acts. See Standard Grocery Co. v. National Fire Ins. Co., 161 Tenn., 644, 32 S. W. (2d), 1023.

"It is insisted that under the terms of the policy the complainant breached its terms by the storage of automobiles in the barn that was burned. The policy does prohibit the storage of automobiles, but inasmuch as it is not shown that the storage of said automobiles contributed to the loss or increased the hazard, I am of opinion that the provisions should be strictly construed, that it unquestionably meant whole automobiles, not parts of such as from which the batteries had been removed. With the batteries removed there can be no special risk by the presence of the automobile.

"It is insisted that complainant cannot recover for a loss that occurred on August 4, 1926, when he alleges in his bill that it occurred on September 3, 1926. I do not think this material, but complainant will be permitted to so amend his bill as to conform to the facts.

"The equities are all with the complainant. He has acted in good faith. He paid his premium. He had a loss, and while it must be admitted that there is much force in some of the positions taken by defendant, it has not suffered because of any of the matters complained of, and a decree should be entered against it for $500 and interest from the time the bill was filed. No penalty will be allowed."

While the assignments of error are seven in number to the effect that the chancellor erred in rendering any judgment against the appellant; and that he erred in holding that the defendant had waived proof of loss, notwithstanding the nonwaiver agreement, and in treating the nonwaiver agreement as a nullity; and that he erred in rendering judgment for the full amount of the policy, notwithstand-

ing the fact, it was insisted, that the record showed and the court found that another insurance company had insurance paid upon the same property and the other insurance company paid its part of the loss; and that he erred in holding that the storage of automobiles in the barn did not add to the hazard or risk; and that finally the court erred in allowing the complainant on the day of trial to amend his bill—we are nevertheless of the opinion that the chancellor's disposition of the case was in entire accord with the equities and right of the transaction.

It was not denied but what the policy which was found and produced was in existence at the time of the fire and no serious contention but what it covered the articles sued for as having been consumed in the barn that was burned. At least, it was abundantly proven that the articles amounting to $1,067 in value were covered by the policy and that they were burned.

We think this policy covered in the sum of $1,000 personal property against loss by fire. Five hundred dollars of this sum was on horses and cows, and "No. 6—$500.00, on vehicles (excepting automobiles and motorcycles, storage and use of which is prohibited unless permission is specifically endorse hereon); robes, horse and carriage equipment, bicycles in use; hay, grain, feed, coal and wood; mechanic's, carpenter, barn and garden tools and implements; all only while contained in above described barn."

There was no stock in the barn or lost, hence No. 5 in the policy evidenced no liability at all.

Item No. 1 covered the dwelling house and was in the sum also of $500, making the total amount of the policy thus confined to be in the sum of $1,500.

There is no question of the statute of limitations of one year. The fire occurred late in the night of August 3d, or early in the morning of August 4, 1926. The bill was filed August 2, 1927. Soon after the fire, Mr. Davis, the insured, called up the local agent of the Ætna and informed the agent of the fire. Evidently, the agent informed the home office, but whether in writing it does not appear. At any rate, the matter was referred by the home office to an adjuster. In addition to the circumstances found by the chancellor in relation thereto, Mr. Murphy, the adjuster, to whom the matter was referred, testified as follows:

"Q. Were you the adjuster to whom this loss was referred for the Aetna Insurance Company? A. Yes, sir.

"Q. Just go ahead and state your connection with it, if any. A. Well, the loss was assigned to my office in due form, which means nothing more than a loss that occurred and that the matter was referred to me for investigation and adjustment, if adjustment was in order. I assigned the loss to Mr. Jennings, an employee of my office,

for the purpose of investigating, and the adjustment proceeded.
. . .

"Mr. Jennings went to Jellico, or rather I think he stopped in Jellico on his return from a loss at Clairfield, Tennessee, and he and Mr. Wood Huff, adjuster, who represented the Hartford Insurance Company, went into negotiations which resulted in the statements that he has made. On Mr. Jennings return from Jellico he made a detailed report to me as to the conditions which he found, after he and Mr. Huff had jointly with Mr. Davis, executed a nonwaiver agreement. I made my report to the company, and their reply was, that probably it would be better to allow the assured to mature his own claim. So far as my office was concerned, negotiations stopped."

Mr. Murphy testified, regarding the waiver, that it spoke for itself; that "it is an instrument and agreement that both the assured and the representative of the company enter into which permits the negotiations without either party waiving any of their rights."

The nonwaiver agreement that was signed is as follows:

"It is hereby mutually agreed and understood by and between R. D. Davis, of the first part and the Hartford Fire Insurance Company of Hartford, Connecticut, and other Companies signing this agreement, parties of the second part, that any action taken by said parties of the second part in investigating the cause of fire or investigating and ascertaining the amount of loss and damage to the property of the party of the first part caused by fire alleged to have occurred on August 4th, 1926, shall not waive or invalidate any of the conditions of the policies of the parties of the second part, held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement.

"The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of the loss or damage, without regard to the liability of the parties of the second part.

"Signed in duplicate, 1st day of September, 1926.
    "R. D. Davis
    "Hartford Fire Insurance Co.
        "By Wood Huff, Adjuster
    "Aetna Insurance Company
        "By H. F. Jennings, Adjuster."

It appears from the proof that at this meeting the complainant and the insurance companies went carefully over all the items of personal property that were lost in the fire and eliminated all articles not covered and a value was placed upon the articles so covered, as the same appears on Exhibit A to deposition of R. D. Davis, pages 91 and 92 of record. This list appears to have been sworn to on May 29, 1927, and afterwards in that form presented to the company; but it

was what was finally made up and filed with the adjusters after a consideration by them of the items on Exhibit B to Mr. Jennings' deposition which contained two sets of figures, being what was claimed and what some of the articles were represented to have cost Mr. Davis.

Mr. Jennings said that this list in this exhibit was what Mr. Davis furnished when they took the matter up with him under the non-waiver agreement as being the implements, machinery, and hay that were destroyed in the fire. He said that there were objections as to a good many of the items, and he took them out and had the steno-grapher in Mr. Siler's office copy a new list, leaving out a large num-ber of these items, and this new list the proof shows to have been that embodied in said Exhibit A to Mr. Davis' deposition.

This list thus made up after discussion and objection, we think the proof shows, is what was delivered to both these companies without any objection as to its final sufficiency, and upon which the Hartford Company settled, paying the sum of $597.25 on the barn and its con-tents.

Mr. Davis says regarding what took place that he had a report al-ready made out and that the adjusters picked out some articles that they were not liable on they said. And he said he signed the papers they asked him to sign and they said that was all; that they made up some papers there, ''and I swore to all of them is the best of my recol-lection.''

Mr. Jennings, who seemed reluctant to admit any of the implica-tions that might be predicated upon this meeting for adjustment and apparently sought to minimize the importance of any part he took in it, was asked this question, ''State whether or not any proof of loss was furnished to your company—sworn proof of loss, as re-quired by the terms of the policy?'' and he answered, ''No, sir.'' But he assisted in the objections and negotiations which led up to the final list which it appears he received and was forwarded to his com-pany whether sworn to or not according to the terms of the policy, it being stated that that was all.

There can be no doubt, we think, but what complainant Davis lost these articles of the rise of $1,000 in value covered by this policy to the extent of $500 as it appears. He seems to have lost in addition thereto $3,200 in other personal property that was lost in the fire be-sides the barn, a building 40x60, two-story, with a metal roof and about twenty stalls and a shed upon one side, which would cost to re-place some $1,500.

It appears that all the insurance complainant had was wholly in-adequate to protect him from serious loss had he collected at all, and there was no question of salvage. The property was wholly destroyed. There was no ground to question the loss or its volume. The parties

met there to investigate and make an adjustment, which they did, and the Hartford paid its proportion and there was absolutely no reason resting in good faith why the other company, the defendants, should not have paid the full amount of the policy. And we find from the circumstances that the complainant was led to believe that both companies were entirely satisfied with the proofs of loss.

Notwithstanding the nonwaiver agreement, we think under the circumstances of this case it was and is nonoperative in so far as any defense might be predicated upon any matter of proof because of the later action of the parties which we think would operate fraudulently if it did not estop them. Having adjusted the matter in the way and form they did, and under circumstances calculated to lead complainant to believe that he had done all that was required, if it was not expressly so agreed, while the nonwaiver agreement that was signed is or was a valid agreement if it had been pursued in good faith, and complainant had been notified immediately that the proofs were not satisfactory.

We entirely agree with the chancellor in his statement that:

"The defendant through its adjuster went out and received without objection what complainant thought to be a satisfactory proof of loss and made no question at the time. It cannot ask for more. The nonwaiver agreement did not prevent a waiver of subsequent acts." See Standard Grocery Co. v. National Fire Ins. Co., 161 Tenn., 644, 32 S. W. (2d), 1023.

We also agree with the chancellor that lacking equipment that would fully constitute a perfect machine, and especially any combustible material or fuel to make them dangerous, they were not in such shape as would require any permission of the company that they might be stored and therefore no impediment to any recovery in the case, and certainly no reversible error was committed in the amendment allowed to make the pleadings conform to the proof had it been material to do so.

We are satisfied with the chancellor's decree. The assignments are overruled, and it is affirmed, with costs against appellants and their securities.

Portrum and Thompson, JJ., concur.