**HOME INDEMNITY CO. et al. v. WILLIAMSON et al.**

No. 12982.

United States Court of Appeals
Fifth Circuit.

July 21, 1950.

Rehearing Denied Aug. 18, 1950.

John S. Porter, Don G. Owens, Jr., W. Wright Mitchell, all of Memphis, Tenn., Thos. E. Pegram, of Ripley, Miss., for appellants.

John D. Martin, Jr., of Memphis, Tenn., James McClure and Herbert M. Fant, both of Sardis, Miss., for appellees.

Before HOLMES, WALLER, and BORAH, Circuit Judges.

HOLMES, Circuit Judge.

There is evidence in the record from which a fair jury may reasonably infer the following facts to be true: On December 18, 1947, J. A. Coop owned a pick-up truck on which he had indemnity insurance with the Home Indemnity Company. At 6 A. M. that day, he and his wife left his home in Collierville, Tennessee, to take their sick child to a hospital in Memphis. Another child accompanied them; this left at home only one member of the family, an eighteen-year-old son named Bryan, who was a senior at high school. Without any authority from his father, Bryan drove the pick-up truck to school. While in school, one of the professors sent word to Bryan to send him the keys to the truck. Thinking the professor himself was going to use it, Bryan let him have the keys, which the professor turned over to Carl Hatch, and sent him and another student to town on an errand. While being used on this mission and driven by Hatch, the truck hit and injured Sam F. Williamson and wife, who were in the street, on their way to a parking area, in Collierville, Tennessee.

The insured, J. A. Coop, gave no notice of the accident to the insurance company, because at that time he did not see how any liability could attach to him in the extraordinary circumstances of the case; but on April 18, 1947, he was served with process from the United States District Court at Memphis, in two suits filed against him and the driver of the truck by Mr. and Mrs. Williamson, claiming damages in the sum of $10,000 and $25,000, respectively, and he gave notice of these suits to the insurer within thirty minutes after such process was served upon him. The agent of the company told him that he had nothing to worry about; that his policy protected him; and that she would turn the matter over to the company's attorney. This was done immediately; the insurer's attorney took complete charge of the defense of both cases; he required Coop to come to his office several times about the case, at all times assuring Coop that he was in no danger of liability for the accident.

On May 6, 1947, eighteen days after the insurer had assumed full control and dominion over the defense of these suits, and after it had called on Coop for information and assistance with respect to them, the latter was in the office of the insurer's attorney on business connected with the defense of said suits and signed a non-waiver agreement upon assurances that minimized the danger of the suits but did not relinquish the company's right to the sole management of their defense. At that time Coop had no counsel of his own, and was relying solely upon the legal advice of the insurance company's attorney; but aside from this the non-waiver agreement expressly provided that it should not be construed as a waiver of the rights of the assured under the policy. If a condition of the policy had been breached by the insured's failure to give notice of the accident as soon as practicable, and if the insurer had waived this breach by its conduct during the eighteen days immediately following notice of the accident, the non-waiver agreement of May 6, 1947, did not rescind the waiver, which had previously become effective, because the agreement operated prospectively only, and did not affect any rights of the insured under the policy.

Coop was present at the trial of the actions against him in Memphis, and cooperated in every way with the company's lawyer, but the company now denies that there has ever been any relationship of attorney and client between it and its attorney and J. A. Coop. It asserts that it did not offer as much in settlement as it would have offered if it had not been defending the case under a non-waiver agreement, as it was in a position to have "two bites at the cherry." The inference is that the first bite was defending the suits against Coop; the second was the prosecution of this case against him. This

is the equivalent of an admission of record that the company allowed the non-waiver agreement to affect the negotiations for a compromise. Whether or not this was culpable conduct is a question for the jury. The non-waiver agreement may not be interposed as a defense to this conduct, because it is not a license for the insurer to act unfairly or to do or forbear anything in bad faith; it is not a rescission of a prior waiver nor a dispensation to enable the insurer to omit doing something required by the contract; it merely preserves the rights of the parties as of the date thereof. The failure of the insured to give notice of an accident may be waived by the insurer immediately after the latter has been fully informed of the occurrent facts; and the time necessary to constitute a waiver need take only a few minutes. In Davis v. Aetna Ins. Co., 16 Tenn.App. 523, 65 S.W. 2d 235, the court held that the insurer waived a non-waiver agreement within ten minutes after it was executed. See also Standard Grocery Co. v. National Fire Ins. Co., 161 Tenn. 640, 644, 32 S.W.2d 1023; Baird v. Fidelity Phenix Ins. Co., 178 Tenn. 653, 162 S.W.2d 384, 140 A.L.R. 1226.

As to the insurance company's being fully informed during the 18-day period before the first non-waiver agreement was signed, we have been struck with the efficiency of the local agent in transmitting to the company's attorney Coop's detailed account of the accident, reported to the agent within thirty minutes after the two suits were filed against him, which she said was made to the attorney for the company as was customary in such cases. Evidently she had instructions, when accidents were reported to her, to notify a certain attorney, which she did. The evidence shows that she telephoned him, and that he was always the one she called. She kept a copy of her report because of the unusual "circumstances about reporting the loss" (R. 194). We quote in full the memorandum, which she says was made from notes taken by her when Mr. Coop reported the accident:

"Several days ago a loss was reported to me by Mr. Coop although it occurred December 18, 1946. However he, like so many other people, did not understand how important it is that an accident be reported immediately, and since he believed that he could not possibly be held at fault, he saw no reason to make the report.

"It was only when suit was filed against him that he called me. On December 18th his son, Bryan Coop, who is a senior at Collierville High School, drove the truck to school. A Christmas party was being planned and he was taking evergreens, etc. While he was in class one of the teachers sent another student to him with the request that he send him the truck keys. Since a teacher made the request Bryan thought nothing of it. Instead of the teacher using the truck he sent two other boys on the errand. They were on the main street of Collierville and had just pulled out from their parking place, in fact were still in low gear, when the claimant and her husband stepped out from behind a parked car directly into the path of the truck. This woman was hit and her leg broken. There had been nothing said about a suit until recently, although the husband talked with Mr. Coop and was told by Mr. Coop that he would assume no liability in the matter as his truck was being driven without his knowledge or consent and that he considered the boy driver and the teacher of the Shelby County Board of Education responsible. Nothing more was said about it and Mr. Coop had completely dismissed it from his mind until this suit was filed."

The insured did not learn of the secret negotiations for a compromise until the trial was going badly against him and it was no longer possible to settle for the pre-trial offer of $4,500. The outcome of the two trials was that judgments were rendered against the insured in both cases, damages being awarded in the sum of $2,500 for Mr. Williamson and $15,000 for Mrs. Williamson. On appeal, the judgments were affirmed in Coop v. Williamson, 6 Cir.; 173 F.2d 313, wherein the facts are briefly stated. Liability was based upon defective brakes, rather than upon the manner in which the stranger drove the truck. The driver was found to be free from negligence. Coop believed the brakes to be in

good working order, as they worked all right when pumped, which use was unknown to the stranger who was driving at the time of the accident. Prior to appealing the case, and as a condition thereof, the company required of the insured another non-waiver agreement, but this instrument is entitled to only such weight as a jury or other fact-finding tribunal may see fit to give it. The court below apparently did not accord any value to it. We do not regard it as a bar on the question of waiver, because the facts relied on by Coop as bad faith occurred prior to the second non-waiver agreement. A reading of this instrument indicates that it was drawn in preparation for a lawsuit such as this.

This brings us to the present suit for a declaratory judgment, Coop and his family having moved to Mississippi in the meantime. The action was filed by the Home Indemnity Co., a New York corporation, against Coop, his son Bryan, S. F. Williamson, and Mae Williamson, all citizens of Mississippi. The prayer was for a declaratory judgment as to the rights and legal relations of the parties under said policy, and with reference to the claim of Coop as to the obligation of the company to pay the judgments of S. F. and Mae Williamson against him. The prayer also was that the defendants be restrained from instituting any action against the plaintiff in any other court or jurisdiction for the interpretation or enforcement of the contract of insurance. The company denied all liability under the policy on the ground of the insured's alleged failure to give notice of the accident to the insurer as soon as practicable. It interposed the delay in giving notice and the non-waiver agreements as a complete defense to all claims of the insured and of the Williamsons, but it did not show any prejudice that had resulted to it from Coop's failure to give notice prior to the time that suit was filed against him; and the policy contains no forfeiture provision for failure to give notice " 'as soon as practicable.' " This court has said that "they are roomy words" which "provide for more or less

free play." Young v. Travelers Ins. Co., 5 Cir., 119 F.2d 877, at 880.

■ The trial court held as a matter of law that due notice had not been given; but, in spite of this, it found that the insurer by its conduct had waived the requirement as to notice and was liable under the indemnity policy, to the extent of the limits thereof, for the amounts of the judgments against the insured. On the other hand, the court overruled the contention of Coop that he was entitled to have the insurance company pay the full amount of the two Williamson judgments against him. We agree with the trial court that the insurer waived the policy's requirement as to notice. This may have been a question for the jury, as the attorneys for Coop contended, but the insurance company cannot complain of this issue not having been submitted to the jury, because its attorneys argued that the facts were undisputed, and urged the court to decide the issue as a matter of law. Accordingly, we think the judgment appealed from should be affirmed, except in so far as it relates to the denial of the claim of the insured against the company for the excess of the amounts due under the two judgments over the amounts adjudged due by it within the limits of the policy. That claim presents an issue that should be submitted to a jury, and that part of the judgment appealed from is reversed.

■ The first non-waiver agreement expressly provides that it shall not be construed as a waiver of the rights of the insured under the policy. One such right was to have the insurer not prefer its own interest to that of the insured. Yet an advantageous offer of settlement was made, which the company declined or failed to submit to the insured until it was too late. This was evidence tending to show that the insurer was looking solely after its own interest and wholly disregarding the interest of the insured. The second non-waiver agreement also operated only *in futuro*. It did not waive any right that had accrued to the insured during the trial or prior thereto. It did not permit the

insurer to represent conflicting interests or to violate well known principles that are applicable to fiduciaries. It was not a protection against double-dealing or failure to cease serving two masters as soon as their conflicting interests became apparent. There is evidence in this record from which a jury may fairly infer that the company knew from the beginning that it did not intend to admit liability on the claim. No reason appears why it did not know what it intended to do when it called for the first non-waiver agreement. Nothing happened that is material here after the date of the second non-waiver agreement, and whatever happened before that date was not affected by it.

 We have here a jury question as to the good faith of the indemnity company in undertaking to manage these lawsuits, in trying to serve two masters, in reserving the policy rights to control settlements thereof, in attempting to be a judge in its own case, in secretly negotiating for a settlement with the injured parties, in failing to submit to Coop a fair offer of settlement by the injured parties, in assuring him that the claim against him was not a serious one, in acting in a fiduciary capacity for conflicting interests, and in repudiating liability under the policy, which it had treated as valid and had relied on to gain control of the two suits. In a case where potential liability under an indemnity policy is admitted, the interests of the insurer and insured are identical in principle, but where the former secretly intends to deny liability, their interests are adverse, and it should disclose that fact without delay; there is evidence here tending to support the inference that the company lulled Coop into fancied security in order to continue in charge of the case, at the same time trying to screen itself from ultimate liability by non-waiver agreements. If Coop had been advised that the claim against him was a serious one, then doubtless he would have called upon the company to settle it, and would have demanded that it either admit or deny liability. The adverse character of the interests that the company was representing should have been clear to it, due to its broad experience in such matters, and would have been clear to appellant if the obligations under the policy had been promptly denied instead of being promptly assumed by the insurer.

If the insurer waived the requirement as to notice prior to May 6, 1947, when the first non-waiver agreement was executed, the rights of the insured under the policy then had become fixed, and were not lost by that or any subsequent non-waiver agreement. This is exactly what happened according to the testimony of J. A. Coop, one of the appellants and owner of the insured truck. Coop testified that, within thirty minutes after suit was filed against him, he reported to the insured's agent, Mrs. Mary Nelson, the entire facts about the suit and the accident. She said to him that he was entirely covered by insurance, and that she would get in touch with the company's lawyers. Evidently this was done, and Coop was called to the office of said attorneys several times. After all these trips, and a promise on behalf of the company's attorney to take care of the suit, he, the attorney, "brought up this non-waiver business," assuring Coop that it would in no way affect his rights under the policy. This testimony clearly warrants the inference that prior to May 6, 1947, the company had waived the insured's failure to give notice sooner than was done, and had absolutely obligated itself to comply with the terms of the policy, irrespective of the time of notice. When we add to this the company's promise to pay in accordance with the policy, and its other conduct during the trial, as testified to by Coop, it seems clear to us that a question for the jury was presented as to whether the company acted in good faith and dealt fairly with the insured.

 In American Mut. Liability Ins. Co. v. Cooper, 5 Cir., 61 F.2d 446, at page 447, this court said:

"It is well settled in cases of limited liability insurance that the insurer may so conduct itself as to be liable for the entire judgment recovered against the insured, although that judgment exceeds the amount of liability named in the policy. But the

courts that have considered the question are not in agreement as to the nature and kind of proof which it is incumbent upon the insured to make in an action against the insurer for the excess which the insured has been compelled to pay over the amount named in the policy.

\* \* \* \* \* \*

"We are not concerned here with the question whether appellee could have recovered on the ground of mere negligence since recovery is now sought only on the ground that appellant did not act in good faith toward him. In our opinion the insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must also appear that it acted in good faith and dealt fairly with the insured. The insurer, as it had a right to do under the policy, assumed exclusive control of the claim against the insured, and took unto itself the power to determine for the insured all questions of liability, settlement, of defense and management before and during trial, and of appeal after final judgment. We are of opinion that this relationship imposes upon the insurer the duty, not under the terms of the contract strictly speaking, but because of and flowing from it, to act honestly and in good faith toward the insured. It was open to the jury to find that the insurer did not perform this duty. The insurer failed to interview the witnesses, or to make any effort to determine whether there was any liability upon the claim asserted against the insured for damages. It did not attempt to acquaint itself with the extent of Mrs. Auman's injuries. It was not in position to act intelligently, or in fairness to the insured in considering the offer of settlement made before suit was brought. It ignored the advice of its counsel to settle before the case came on for trial. During the trial it offered to settle for $3,500, thus apparently admitting the liability of the insured for substantial damages; but it failed to have a representative at the trial with authority to settle within the limit of liability named in the policy. It finally rejected a reasonable offer of settlement within that limit because the insured would not assume a part of its contractual liability. The jury were therefore warranted in finding that the insurer did not act in good faith toward the insured in considering Mrs. Auman's claim for damages, in refusing to settle, and in demanding that the insured contribute to the settlement which it could and should have made at its own expense." See also Noshey v. American Automobile Ins. Co., 68 F.2d 808, a Tennessee case by the Sixth Circuit. On the question of invoking the declaratory judgment procedure, see Pacific Indemnity Co. v. McDonald, 9 Cir., 107 F.2d 446, 448, 131 A.L.R. 208; Hargrove v. American Central Insurance Company, 10 Cir., 125 F.2d 225, 228.

The judgment appealed from should be affirmed in part and reversed in part, and remanded for a jury trial on the issue herein as to damages resulting to the insured from the company's alleged bad faith or unfair dealing in its transactions with him under the policy. Affirmed in part and reversed in part, and remanded for further proceedings not inconsistent with this opinion.

Judge WALLER, took no part in the final decision of this case.

PER CURIAM.

■ The petition for rehearing evidently overlooked or disregarded the first part of the sentence at the beginning of the court's opinion. The facts, as stated in the opinion, were not considered to be undisputed but only the facts that a fair jury might reasonably infer from the evidence to exist. We realize that there was not only a conflict between different witnesses, but that in some instances the witnesses contradicted themselves, not corruptly but in an honest effort to tell the truth. Such conflicts present issues as to credibility, which should be left to the determination of a jury. This is especially true with reference to the issue of bad faith or unfair dealing.

The petition for rehearing is denied.