**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a Corporation, Appellant,**

v.

**J. P. GLORFIELD, Appellee.**

**No. 14187.**

United States Court of Appeals
Ninth Circuit.

Oct. 18, 1954.

H. Earl Davis, Spokane, Wash., for appellant.

Jerome Williams, Cashatt & Williams, Spokane, Wash., for appellee.

Before BONE, FEE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Plaintiff-appellee, J. P. Glorfield, of Whitman County, Washington, was the insured under a blanket farmers' liability policy written in the state of Washinton by the defendant-appellant American Casualty Company of Reading, Pennsylvania. The policy period was for the year ending March 21, 1950. No federal questions are presented. Jurisdiction rests solely on the diversity of citizenship of the parties.

On Glorfield's farm in Whitman County he maintained an earthen dam across a small creek or stream called Packer Creek. The stream seems to have been of little consequence except in connection with floods after rains. From time to time after rains the dam washed out. It is wholly immaterial to the decision of the case, but it may not be inappropriate to note that in view of the history of the successive dams at the particular damsite on Packer Creek the defendant, under its blanket farmers' liability policy, undertook a poor risk.

The dam washed out on February 25, 1950. It would be admitted by all parties that some damage was done to Helen S. Schroeder and Fred E. Wagner, separate land owners below Glorfield on Packer Creek, by the impounded flood waters released by the broken dam. Eventually, Wagner and Schroeder filed separate suits in the state court in Whitman County against Glorfield, seeking to recover their damages.

American Casualty Company commenced the defense for Glorfield of the Schroeder and Wagner suits, providing H. Earl Davis, an attorney in Spokane, as principal counsel. Davis arranged for F. L. Stotler, an attorney of Colfax, Washington, to be associated with him. In due course Schroeder's and Wagner's attorneys took a pre-trial deposition of Glorfield. Objectively, it can be stated that Glorfield's testimony upon the deposition was such as to make an attorney for an insurance company unhappy. Glorfield, at the deposition, seemed to have a great desire to please, for to the Schroeder and Wagner attorneys he responded that he had told the plaintiffs that if there was any damage he probably should pay for it. But under the questioning of Stotler, provided by the insurance company, he changed the statement to say that he had admitted to the plaintiffs only that "if he was responsible" he wanted to pay the damage. Claiming that there had been lack of cooperation, assumption of liability by Glorfield and collusion between Wagner and Schroeder on the one hand and Glorfield on the other, American Casualty withdrew from the defense of the Schroeder and Wagner cases, notifying Glorfield that the reason this was done was that Glorfield had "violated the terms and conditions of the policy contract." [1] Glorfield was further notified that American Casualty disclaimed all liability for any further defense and would refuse to pay any judg-

<hr>

1. Pertinent sections of the policy involved in whether or not American Casualty had a right to withdraw are as follows:

"10. Assistance and Cooperation of the Insured * * *

"The insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence of bodily injury."
and

"13. Action against Company * * *

"No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant, and the Company."

ment or costs. The withdrawal by American Casualty was made on the eve of the trial of the Schroeder and Wagner cases.

From the time of the withdrawal forward, the two damage cases were handled by F. L. Stotler, who accepted employment by Glorfield individually, and by another attorney, Thomas R. Kimball, of St. John, Washington. Basic liability of Glorfield does not seem to have ever been seriously disputed in the Wagner and Schroeder cases, but there was much question as to the amount of damage and the liability at all for certain items of damage. In due course, Schroeder and Wagner obtained judgments against Glorfield, which the latter settled with a little discount for the respective amounts of $2,659.90 and $6,277.50. These amounts included Schroeder's and Wagner's costs. As costs of his own, Glorfield spent $750 for the services of Stotler and Kimball and $20 for miscellaneous purposes.

Having satisfied the Wagner and Schroeder judgments, Glorfield turned his attention to American Casualty, employing the law firm of Cashatt & Williams, of Spokane. In due course they filed the complaint herein for Glorfield, setting forth that American Casualty was liable for the policy limit of $5,000 on property damage, for Glorfield's attorney fees in the flood suits and also for the difference between $5,000 and the amount paid to Wagner and Schroeder to satisfy their judgments. The last claim was grounded on allegations that shortly before the trial in the Whitman County state court cases American Casualty's attorney, H. Earl Davis, had received a joint offer, after some negotiation with the attorneys for Schroeder and Wagner, to compromise both losses for the total sum of $5,000, the exact amount of Glorfield's policy coverage. It was asserted by Glorfield that in withdrawing from the case Davis never communicated this offer to Stotler or Kimball or Glorfield.

No doubt Davis, who appears herein for American Casualty, has an abiding belief (1) that Glorfield was cooperating not with American Casualty, but with Wagner and Schroeder, (2) that Glorfield had assumed liability contrary to the terms of the policy, and (3) that Stotler or Kimball or Glorfield knew or ought to have known that the cases of Wagner and Schroeder could have been settled for $5,000.

There is evidence in the record which might have justified the trial court in finding for American Casualty, but this it did not do. On other evidence it found that Glorfield did not admit or assume liability to Schroeder and Wagner, did not counsel with and encourage them, and that he, Glorfield, performed all conditions of the insurance contract to be performed by him. Further, it found that the compromise offers for a total of $5,000 were made, that they were not communicated to Glorfield, Stotler or Kimball and that if Glorfield had known of the offers he would have accepted them.

During the course of the trial below against American Casualty, a teletype message dated June 4, 1952, from the home office of American Casualty to one of its representatives in Washington state concerning the defense of the Wagner and Schroeder suits, came into evidence without objection, which message was as follows:

"In View of the Admission Made by Our Assured With the Two Claimants I Believe We Should Step Out of the Case. As to a Suit Against the Company and a Verdict Against the Assured, I believe We Should Take That Chance Because as the Amount is Over $3,000, It Would Have to Be in Federal Court and It Would Not Be a Jury of Farmers Who Are Neighbors of His. Will You So Advise Our Attorney That We Will Not Defend, and Anyway Our Exposure Is Only $5,000, Which Is the Amount of the Demand, So We Really Have Nothing to Gain and Nothing to Lose by This Procedure."

In reaching its conclusions on the facts, the trial court may have been

greatly influenced by the foregoing, and quite properly it could be considered a very damaging admission, indicating that the home office of the company made not entirely the same approach to the matter of withdrawal as did attorney Davis.

The facts of the whole case having on competent evidence been found for the plaintiff on the issues of the complaint and the answer and a judgment having been entered which makes Glorfield whole except for his attorney fees in the instant case, there is little for this court to review on appeal.

■■ Appellant attacks the findings. It is this court's conclusion that they are supported by adequate evidence.

Then appellant contends that at most the judgment below should be held to the policy limits of $5,000, plus court costs and attorney fees of Glorfield in the state court cases.

This is not a case where the insurance company in the exercise of its best judgment decided to reject an offer at policy limits, decided to defend and in the end found that acceptance of the offer would have been better. Here American Casualty was by its insurance policy under a contractual obligation to defend. The district court has found that the defense was abandoned without legal excuse.

Without special circumstance, on wrongful withdrawal, of course, the liability of the company would have been limited to $5,000, the policy limits for property damage, and the attorney fees and court costs of the state court action.

■ It is a cardinal rule of damages that one is ordinarily obligated to reduce one's own damages. Should not an insurer who has wrongfully withdrawn from performance of his policy contract have a continuing duty to supply the insured with information that would help the insured avoid loss? Should not the insurer be charged with the consequences of a failure to advise the insured? If a plaintiff must reduce his own damages, is there not a correlative duty of the defendant to give, when he can with the least of effort do so, the plaintiff information that will reduce his loss?

■ It seems not very important whether a recovery for such failure be treated as a proper measure of contract damages or as sounding in a tort the facts of which originally began in contract. The award hereinbelow of the excess loss over the policy limits would seem to be justified by L. J. Dowell, Inc., v. United Pacific Casualty Co., 191 Wash. 666, 72 P.2d 296. Cf. Home Indemnity Co. v. Williamson, 5 Cir., 183 F.2d 572; American Mutual Liability Ins. Co. v. Cooper, 5 Cir., 61 F.2d 446; Des Moines Terminal Ry. Co. v. Des Moines Union Ry. Co., 8 Cir., 52 F.2d 616, 627.

■ Approached from another angle, by the terms of the policy, American Casualty, when defense was necessary, was obligated to hire an attorney for the defense to be made in Glorfield's name. This it did. In the employment, duties arose from the attorney to the American Casualty and also to Glorfield. Both clients, the paying one and the one who had the company's attorney assigned to him, were entitled to advice of offers of settlement. A court should be reluctant to hold that an attorney upon withdrawing from representation was ever released from his obligation to give any client, real or "captive," information the client ought to have, even though, absent attorney-client relationship, all other duty would end. However, personal censure of lawyer Davis is not intended. Under the findings below, at most, in a moment of aggravation, when he believed his prime client, American Casualty, had been compromised by Glorfield, he made a mistake.

The judgment is affirmed.