## George v. Nationwide Mutual Insurance Company

*David W. Ketler*, for plaintiffs.

*George Hardy Rowley*, for defendant.

MC KAY, J., May 1, 1962.—There is before the court a preliminary objection in the nature of a demurrer to plaintiffs' complaint. The action is in trespass brought by the executors of the estate of Jean S. George, deceased, against defendant, a liability insurance carrier, to recover damages sustained as a result of its alleged negligence and bad faith in failing to settle a suit against the estate. The facts averred in the complaint are in substance as follows:

On November 13, 1958, plaintiffs' decedent was involved in an automobile accident in Erie County in which both she and one Robert Wayne Hall, an occupant of the other car, were killed. The circumstances of the accident were such as to indicate beyond serious question that Mrs. George was the one who was responsible for the collision.[1]

Hall's administrator brought an unlawful death and estate action against the present plaintiffs as executors of the estate of Mrs. George, in the Court of Common Pleas of Erie County. Defendant company had issued a liability policy which protected the George automobile but was limited to a maximum of $20,000 for death to one person.

In April of 1960, shortly before the case was called for trial, defendant's attorney undertook to settle the

---

[1] The George car traveled on the wrong side of the highway for 150 feet with its left wheels on the berm, suddenly veered to the right and struck the automobile in which Hall was a passenger.

claim. He first suggested a settlement at $15,000, which was acceptable to plaintiffs in the case but not to the company and then proposed one at $11,000 with the same result. Harold George, one of the executors, approved of the proposed settlement at $11,000 and urged defendant to settle the case for that amount. Also, at the pretrial conference, Judge Samuel Y. Rossiter, who presided, stated that in his opinion $11,000 was a very reasonable settlement and that defendant would be very foolish not to agree to it. Nevertheless, defendant persisted in its refusal to settle at $11,000, and so far as the complaint discloses, made no further exploration of a possible settlement. At the trial which followed, Hall recovered verdicts totaling $21,694 and the judgments were affirmed by the Supreme Court on appeal.[2]

Thereafter, the present plaintiffs paid the excess of the judgment over and above the insurance coverage, demanded reimbursement from defendant and, upon its refusal, brought the present action in which they allege that defendant was negligent and acted in bad faith in refusing to settle the case. Plaintiffs now concede that negligence in failing to settle is not in itself ground for liability and rely solely upon their contention that defendant acted in bad faith in the matter of settlement.

In determining whether or not a judgment should be entered on a demurrer, the question is always whether, upon the facts averred in the complaint, it shows with certainty that the law will not permit a recovery by plaintiff, and where a doubt exists on this question, the demurrer should not be sustained: Sun Ray Drug Co. v. Lawler, 366 Pa. 571.

The princples of law applicable to a case involving the question of good faith by an insurer in conducting

---

[2] 403 Pa. 563, 170 A. 2d 367.

negotiations for the settlement of a case and in determining whether or not to litigate it are set forth in Cowden v. Aetna Casualty and Surety Company, 389 Pa. 459; Perkoski v. Wilson, 371 Pa. 553, and Wiener v. Targan, 100 Pa. Superior Ct. 278. As summarized in the Cowden case at page 468, the law in Pennsylvania is as follows:

". . . an insurer against public liability for personal injury may be liable for the entire amount of a judgment secured by a third party against the insured, regardless of any limitation in the policy, if the insurer's handling of the claim, including a failure to accept a proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its contractual duty. . ."

And, at page 469:

". . . While the contract is primarily one of indemnity, it operates at the same time to create an agency relationship in its provision for the insurer's exercise of control over the disposition of claims against the insured (within the policy's limits) whether they be by settlement or litigation. . ."

Thus, it was the duty of defendant in the instant case not only to defend the executors of the George Estate acting as their agents in the Hall action, but to consider in good faith the interest of the insured as a factor in coming to a decision as to whether to settle or litigate the claim.

In the Cowden case, the court further stated, at page 470:

". . . The predominant majority rule is that the insurer must accord the interest of its insured the same faithful consideration it gives its own interest . . . Since it is obvious that the interest of one or the other party may be imperiled at the instant of decision, the fairest method of balancing the interests is for the insurer to treat the claim as if it were alone

liable for the entire amount. But, that does not mean that the insurer is bound to submerge its own interest in order that the insured's interest may be made paramount. It means that when there is little possibility of a verdict or settlement within the limits of the policy, the decision to expose the insured to personal pecuniary loss must be based on a bona fide belief by the insurer, predicated upon all of the circumstances of the case, that it has a good possibility of winning the suit.[3] While it is the insurer's right under the policy to make the decision as to whether a claim against the insured should be litigated or settled, it is not a right of the insurer to hazard the insured's financial well-being. Good faith requires that the chance of a finding of nonliability be real and substantial and that the decision to litigate be made honestly."

Hence, in deciding whether the present complaint alleges facts sufficient to indicate bad faith on defendant's part in handling the Hall case against plaintiffs, we must ask ourselves these questions:

Did defendant have a real and substantial chance of obtaining a lower verdict than $11,000 by going to trial? [4] Did it act honestly in plaintiffs' interest as well as in its own when it decided to litigate and rejected the $11,000 proposal of settlement?

As defendant properly contends, it is persuasive evidence of want of bad faith that, by rejecting the proposal of settlement, defendant risked not only

---

[3] In the Hall case, there was little, if any, doubt that the insured was liable. However, even if liability is assumed, the company would, of course, have the right to litigate the suit rather than to settle it for a sum greater than it believed to be justly due, provided it acted in good faith in the honest exercise of judgment.

[4] The facts averred in the complaint which throw light on the amount of damages sustained by Hall's death are meagre. About all that appears is that he was 17 years old and intended to follow the teaching profession.

plaintiffs' money, but $9,000 of its own money. On the other hand, the fact that both its own attorney and the pretrial conference judge strongly recommended the settlement points to some extent in the other direction.

Further, assuming that defendant honestly believed the $11,000 figure to be too high, did not the criterion of good faith require defendant to at least explore the possibility of a more favorable settlement than the $11,000 one? In the absence of an explanation of defendant's motives, would not a jury be justified in finding that the rejection and failure to negotiate amounted to arbitrary and capricious conduct on defendant's part, and, if so, was not that in itself evidence of bad faith?

There is respectable authority which supports the principle that an insurer's arbitrary refusal to negotiate is evidence of bad faith.

In the case of Johnson v. Hardware Mutual Casualty Co., 109 Vt. 481, the court held that the refusal to make a settlement for an amount within the policy coverage, which refusal was persistently maintained against the advice of counsel and repeated recommendations of the adjuster upon complete information concerning the probability of a large verdict, showed bad faith. Bad faith was defined in that case as an intentional disregard of the insured's financial interest in the hope of escaping the full responsibility imposed upon the insurer by the policy. In Lanferman v. Maryland Cas. Co., 222 Wis. 406, 267 N. W. 300, the frivolous disregard of the insured's rights by refusing to accept an offer to settle for an insignificant sum was held to constitute bad faith. In Home Indemnity v. Williamson, 183 F. 2d 572, even the failure of an insurer to inform the insured of an offer to compromise an action against the latter was held to be evidence of bad faith.

Even more compelling authority for the above rule, however, is Bell v. Commercial Insurance Company of Newark, New Jersey, 280 F. 2d 514.

In that case, as in the present one, the liability of the insured was clear and the issue was primarily how high a verdict the jury would be likely to return. The claimant in the personal injury had offered to settle the case for $25,000, which was $15,000 more than the coverage.[5] The insurance company declined to settle for that sum, made no counter offer and did not attempt further negotiations looking toward settlement. The district court declined to submit the matter of the company's good faith to the jury and directed a verdict for defendant. This order was held to be error.

In its opinion, the court of appeals clearly indicated that the insurer had a duty to at least explore the possibility of a settlement. For instance, at page 516, it stated:

". . . there was testimony from Bell, which if believed, would support the conclusion that during the course of the trial a suggestion had been made by counsel for claimants which, if at least explored, could well have led to settlement within the policy limits, and that he had reported this to the insurer's counsel. . ."

And:

". . . Although the insurer concluded that a verdict would not be returned for $25,000, it does not appear that it had reached, at least for communication to Bell, *a conclusion as to what the case might be worth for settlement purposes*." (Italics supplied.)

While it is true that in the Bell case the proposed offer of settlement was in excess of the amount of the coverage, whereas in the instant case, it was less, we

---

[5] Of course, this fact distinguishes the Bell case from the present one very materially, but the rationale of the court's opinion would still be pertinent to the instant case.

are of the opinion that this distinction is not substantial enough to eliminate the Bell case as authority in the situation which faces us.

For the above reasons, we conclude that it is for the jury and not the court to determine the presence or absence of bad faith in defendant's conduct in the present case.

It follows that the preliminary objection must be overruled.

### Order

Now, May 1, 1962, it is ordered that defendant's preliminary objection in the nature of a demurrer is overruled, and defendant shall file a responsive answer within 20 days from receipt of notice of this order.