JORDAN, Circuit Judge,
dissenting:
This is, in some ways, an uncommon disability discrimination case. As the majority explains, Ms. Martin was ultimately offered an almost identical sales representative position in Charlotte. And when she applied for that position, she knew it would require her to work for Darrell Craven, the same person she believed discriminated against her based on her disability. See D.E. 228 at 188. So I can understand where the majority is coming from in saying that Ms. Martin did not suffer an adverse employment action. But at the end of the day, I think this was an issue for the jury, and cannot concur in setting aside its verdict.
Our cases generally hold that a transfer or reassignment can be adverse “if it involves a reduction in pay, prestige[,] or responsibility.” Evans v. Books-A-Million, 762 F.3d 1288, 1297 n.5 (11th Cir. 2014). But those cases are not directly on point because this is not a typical transfer case. Ms. Martin was not simply, moved from one position to another. Instead, she was involuntarily “displaced” from her sales representative position in Atlanta when Eli Lilly reorganized the Georgia territories. See D.E. 228 at 25, 169. Ms. Martin, in other words, lost her job in Atlanta, and Eli Lilly, instead of transferring her, required her to affirmatively apply for and obtain a new position in the company. See id. at 55, 172-74. That, I submit, is no different than refusing to renew an employee’s contract, which we have held is an adverse employment action. See Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1241 (11th Cir. 2016) (“[T]he School District’s refusal to renew Quigg’s contract was clearly an adverse employment action[.]”). See also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (“A tangible employment action constitutes a significant change in employment status, such as ... firing[.J”).
Admittedly, this case is close, in part because Ms. Martin testified that Char *960 lotte was one of her preferred locations for a new position and that, being a native of North Carolina, she had some reasons to return there. See D.E. 228 at 44, 179-82. But we should not forget that Ms. Martin suffered from lupus and depression, and her “very important [medical] treatment team” was in Atlanta. Id. at 44. In fact, Ms. Martin had also applied for two positions in Georgia, but did not receive an offer for either one. See id. at 196. On balance, I do not think we can hold as a matter of law that the involuntary “displacement” did not constitute an adverse employment action just because Charlotte was one of Ms. Martin’s two desired locations when applying for a new position.
When reviewing a Rule 50 motion, “we must consider all the evidence in the light most favorable to [the non-moving party] and grant [her] the benefit of all reasonable inferences.” Bogle v. Orange Cty. Bd. of Cty. Comm’rs, 162 F.3d 653, 656 (11th Cir. 1998), Judgment as a matter of law is only appropriate “if the facts and inferences point so overwhelmingly in favor of the movant that reasonable people could not arrive at a contrary verdict.” Id. (internal quotation marks and alteration omitted). To the extent that Ms. Martin’s testimony was at times inconsistent, that presented a credibility issue for the jury to resolve. See Home Indem. Co. v. Williamson, 183 F.2d 572, 578 (5th Cir. 1950) (explaining, on rehearing, that “witnesses contradiet[ing] themselves” present credibility issues which are left to the jury). The jury could have reasonably found that, under the circumstances, relocating to Charlotte (with Mr. Craven still as her supervisor) was materially adverse.
With respect, I dissent.