The GREYHOUND CORPORATION,
Appellant,

v.

EXCESS INSURANCE COMPANY OF
AMERICA, Appellee.

No. 15748.

United States Court of Appeals
Fifth Circuit.

May 15, 1956.

Rehearing Denied June 25, 1956.

Willis H. Flick, T. J. Blackwell, Miami, Fla., Blackwell, Walker & Gray, Miami, Fla., for appellant.

F. E. Gotthardt, Miami, Fla., Morehead, Forrest, Gotthardt & Orr, Miami, Fla., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

Here is another phase of the litigation from which arose American Fidelity & Casualty Co., Inc., v. Greyhound Corporation, 5 Cir., 232 F.2d 89. Our preliminary statement, with only minor change, is taken from the opinion in that case. The appellee here, Excess Insurance Company, originated the proceedings by bringing an action against Greyhound, alleging that it had entered into a contract of insurance with Greyhound insuring Greyhound against loss from liability in excess of certain stated amounts; that Greyhound had contended that Excess was liable for damages arising out of a personal injury action against Greyhound, reported in Florida Greyhound Lines v. Jones, Fla., 60 So.2d 396; and that there is no liability on its part for the loss thus suffered by Greyhound because Greyhound failed to give timely notice to Excess of the Joneses' claims of liability, as is required by the policy. The complaint sought declaratory relief that Excess was not liable to Greyhound for any amount based upon the judgments in the Jones case, and injunctive relief against Greyhound's instituting any action to recover such sums.

Greyhound answered, denying that it had been guilty of any breach of duty in the premises, and alleging that all conditions entitling it to recover against Excess had been performed. It also alleged that Excess had been in no manner harmed or prejudiced by Greyhound's acts or failures to act. In addition, it brought a third-party action against the Markel Service, Inc. and American Fidelity and Casualty Company, Inc. Its complaint in the third-party action alleged that, upon being served with process in the Jones case, it gave proper notice of the suit to Markel and American Fidelity and Casualty, its primary carriers; that the defense of the action thereupon passed into the hands of the third-party defendants; that although the ad damnum clauses in the Jones case were raised (thereby increasing the possibility of a recovery in excess of the

amount covered by the primary policy), the third-party defendants failed to notify either Greyhound or Excess of this amendment, although it knew of the existence of excess coverage under the contract of insurance entered into between these two last-named parties; that Greyhound was guilty of no breach of duty in the premises; and that, if Excess' liability was discharged by its not receiving notice of the amendment of the ad damnum clauses in the Jones case, then the third-party defendants breached a duty owed to Greyhound to settle the Jones case, because although there was no defense to it, the third-party defendants refused to settle, but proceeded to trial, incurring liability on Greyhound's part to the Joneses for damages which they recovered in excess of the limits of the primary policy, which Excess refuses to pay. Later Greyhound amended its third-party complaint to allege, inter alia, that the third-party defendants were guilty of bad faith and negligence in conducting the settlement negotiations in the Jones case.

Subsequently the trial court granted motions for summary judgment made by Excess and Markel, and from the first of these judgments Greyhound has appealed. For our determination is the question whether such issue of fact was presented as would make disposition by summary judgment improper.

American Fidelity and Casualty Company had insured Greyhound against liability to the extent of $40,000 for any one person injured or killed in the operation of motor vehicles by Greyhound, and to the extent of $100,000 for personal injuries received in any one accident. Against liability over and above the amounts so specified in American's primary policy, coverage was provided by a policy issued to Greyhound by Excess. This latter policy contained, among other terms, the following:

"Upon the occurrence of any accident which may involve liability on the part of the company, the assured shall give immediate written notice thereof with the fullest in-formation obtainable at the time to the company at 99 John Street, New York, New York. The assured shall give like notice with particulars of any claim made on account of such accident. If any suit is brought against the assured to enforce such claim, the assured shall immediately forward to the company copies of every summons or other process that may be served upon the assured. The company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the assured, but the company shall have the right and shall be given the opportunity to associate with the assured in the defense and control of any claim or suit or proceeding relative to an accident which claim or suit involves, or may involve, this contract, in which case the assured and the company shall cooperate in all things in the defense of such claim or suit or proceeding. Should there be any conflict between the company and the primary carrier respecting a claim covered under this contract, the assured agrees to follow the written instructions of the company regarding the claim so in dispute, and the company agrees to indemnify the assured for any loss or expense the assured may sustain by reason of the assured's having followed such instructions. Such indemnity, however, shall not increase the maximum liability otherwise assumed by the company under this contract.

"No notice to any agent, or knowledge possessed by any agent or by any other person shall be held to effect a waiver or change in any part of this contract nor estop the Company from asserting any right under the terms of this contract; nor shall the terms of this contract be waived or changed, except by endorsement issued to form a part

hereof, duly executed by an officer of the Company".

On August 11, 1947, the accident occurred out of which arose the suit of Anna Jones and T. R. Jones, her husband, against Greyhound. The driver's report to his employer, Greyhound, said nothing with respect to bodily injuries. Nearly a year and a half later suit was filed by Mrs. Jones and her husband against Greyhound. On December 11, 1948, a summons was issued. This process was served on Greyhound two days later, December 13, 1948. The following day Greyhound sent the summons to American which forwarded it to its attorneys to "protect the interest of all concerned." The summons was not accompanied by any declaration or other pleading. It showed that damages in the amount of $75,000 were claimed. An appearance was filed in the cause on behalf of Greyhound by the attorneys selected by American. To these attorneys counsel for Jones delivered a copy of the declaration showing that damage was claimed by Anna Jones in the amount of $65,000 for bodily injuries, with derivative damage only claimed by the husband, T. R. Jones, in the amount of $10,000. Of this declaration no notice was given to Greyhound by American or by the attorneys employed by it to represent Greyhound. No advice was given to Excess.

On December 12, 1949, American's claim department wrote a letter to Greyhound where, among other things, it was said:

"For some unknown reason the pleadings are resting on demurrer to the plaintiff's declaration with no action taken since the demurrer was filed on the March Rules in 1949.

"In general the plaintiff and her husband have indicated by their actions that they are deliberately attempting to build up their claim".

In October of 1950, new counsel noted their appearance for Mrs. Jones and her husband. Soon thereafter an amended declaration was filed alleging damages on behalf of Mrs. Jones in the amount of $175,000 and for her husband in the amount of $75,000, a total of $250,000. Of this amended declaration no notice was given to Greyhound by American or by the attorneys employed by it to represent Greyhound. No advice was given to Excess.

The case of Jones v. Greyhound was set for trial during the week of November 5, 1951. On October 15, 1951, in response to an inquiry, American's claim agency wrote Greyhound a letter in which appeared the following:

"I understand that you requested this office to advise you if there was a possibility this claim would involve excess. We cannot tell whether or not it will go into excess because we cannot foretell the future. All I can say is that in our judgment, we do not believe that excess will be involved.

"However, Mrs. Jones is suing for $75,000 which is, of course, in excess of your limits with the American Fidelity and Casualty Company. We are, therefore, taking this opportunity to invite you or your excess carrier to associate counsel in the trial of this case, with our trial attorneys."

Greyhound sent a copy of the foregoing letter to Excess, which acknowledged receipt of it on October 18, 1951, and on October 31, 1951, Excess wrote Greyhound denying liability because of the delay in giving notice. The case of Jones v. Greyhound was tried. On November 13, 1951, a verdict for Mrs. Jones in the amount of $50,000 and for Mr. Jones in the amount of $17,500 was returned. On this verdict judgment was entered, and on appeal the judgment was affirmed. 60 So.2d 396.

Greyhound contends that it could not have anticipated at the time of the accident nor when the suit was filed that the primary coverage might become inadequate, and that when it was informed of the possible insufficiency of its primary

coverage it notified Excess. Greyhound contends that there were genuine issues of material fact presented and hence the entry of a summary judgment was error. Rule 56(c) Fed.Rules Civ.Proc., 28 U.S.C.A. It urges that two factual issues were posed; first, whether the notice given by Greyhound to Excess was adequate; and second, whether Excess had waived or was estopped to assert the absence of the notice which may have been required by the policy of insurance which it had issued to Greyhound.

In its discussion of the first of these questions, that is, the adequacy of the notice, the appellant points out that the same provisions as to notice are neither needed nor required in excess insurance as are generally found in a policy of primary coverage. In the April, 1954, issue of Insurance Counsel Journal, Herbert C. Brook discusses the question. From his article we quote:

"It is readily apparent that in the field of third party liability insurances, the division of responsibility inherent in the use of deductibles and excess insurances is more apt to give rise to controversy. For instance, in the matter of giving notice of accident, the situation is not as straightforward as in the case of primary insurances. In primary liability insurances the insurer uniformly undertakes to investigate and defend any claim covered by the policy. Consequently such policies regularly require that the assured give to the company immediate notice of any accident or claim involving the insurance. However, in excess liability insurances (as well as in most liability insurances written over a substantial deductible) the excess insurer does not undertake to defend the assured. Consequently, the excess insurer is not interested in every accident, but only in those that may be serious enough to involve it. Excess policies, therefore, usually require an assured to give notice of claims 'that appear likely to involve the excess.' The excess carrier can then take such steps as it sees fit by way of additional investigation, etc., to protect its own interests. Under the notice provision of the excess wording the exercise of some judgment on the part of the assured in evaluating the case is contemplated. The provision is, however, a condition precedent to liability and if held to be breached, the insurance company would be exonerated from liability, even though there was no showing that it was in fact prejudiced by the failure to receive timely notice." 21 Ins. Counsel J. 131.

Notice is required by the Excess policy upon the occurrence of any accident which "may" involve liability under the policy. The word "may", when used as an auxiliary verb, is susceptible of several meanings. It comprehends mere possibility, but includes also the thought of probability, and in its scope is the idea of an expectancy of reasonable certainty. The meaning in a particular contractual provision is to be determined by a reference to the context. Reynolds v. St. Louis Transit Co., 189 Mo. 408, 88 S.W. 50, 109 Am.St.Rep. 360; State ex rel. English v. Ruback, 135 Neb. 335, 281 N.W. 607. The policy provisions gave the insurance company certain rights as well as imposing obligations. It had the right to associate with the assured in the defense of the suit, and in the event of any conflict between it and the primary insurance carrier it had the right to require the assured to follow its instructions. A rule of construction which is here applicable has been thus stated:

"It is true that conditions are inserted in insurance policies by the insurer for its protection and should be construed, where such construction is permissible, against the insurer. Hoffman v. Illinois National Casualty Co., 7 Cir., 159 F.2d 564, 565. It is equally true, however, that the insurance policy is the contract between the parties and that the provisions of that contract, which are clear and unambiguous

and which are neither illegal by statute nor by reason of their being against public policy, should be enforced by the courts. The courts may not rewrite for the parties insurance contracts which are clear and unambiguous." Hawkeye-Security Ins. Co. v. Myers, 7 Cir., 1954, 210 F.2d 890, 893.

We think the word "may" as it was used in the policy issued by Excess, was intended to refer to those types of accidents which frequently and regularly are or become claims within the coverage of the policy in which the word is used. If the happening was such that the assured should have anticipated that it might develop in a claim of an amount involving liability, then the policy provision imposed the duty of giving notice.

The contract, evidenced by the policy, stipulated that when there was an accident which may involve liability the assured should give "immediate" written notice. It is generally held that a provision for immediate notice is of the essence of the contract and a failure to comply with the provision will defeat recovery where the policy is issued, as here, subject to specified conditions including the requirement for immediate notice. 29 Am.Jur. 829, Insurance § 1105. But the requirement of "immediate" notice is usually held to mean that the notice must be given within a reasonable time. 29 Am.Jur. 827, et seq. Insurance § 1104; Standard Accident Ins. Co. v. Alexander, 5 Cir., 1939, 103 F.2d 500; Le Sage v. Utilities Ins. Co., 5 Cir., 1942, 131 F.2d 536. It has been said that "immediate", in provisions in casualty insurance policies for notice of an accident, is to be given the same meaning as the clause "as soon as practicable." Zanderer v. Continental Casualty Co., 2 Cir., 1944, 140 F.2d 211. In discussing the latter phrase this court has said:

"The time words in the clause, 'as soon as practicable' are not words of precise and definite import. They are roomy words. They provide for more or less free play. They are in their nature ambulatory and sub-

ject under the guiding rule, to the impact of particular facts on particular cases. They do not in terms require immediate notice or notice within a particular number of days. They may not be so construed. They do not even provide for notice 'as soon as possible.' In terms, they require notice 'as soon as practicable' and they must be construed as requiring the notice within a reasonable time under all the circumstances, to effectuate the objects and purposes of the notice clause. Thus, in applying the clause, we think that if it is made to appear that the notice was given reasonably quickly after the occurrence of the accident, it will not be open to the company to prove, that a more immediate notice would have been more effective, in preparing their defense, for the time provisions of the clause would have been in effect literally complied with. On the other hand, if it appears that the giving of the notice has been delayed longer than was reasonably required physically to give the notice, then the material question would be whether that delay has caused prejudice." Young v. Travelers Ins. Co., 5 Cir., 1941, 119 F.2d 877, 880.

Greyhound excuses its failure to give earlier notice because it had no reason to suppose that the injuries were more than trivial and that as soon as it learned otherwise the notice to Excess was given. The rule, as stated by this Court, is:

"It was the duty of insured here to report the accident as soon as practicable. This does not mean that every trivial accident that occurred should be reported. An accident that an ordinarily prudent individual acting reasonably would consider, under all the circumstances, as inconsequential, and which would not afford the basis of any claim, the insured was not bound to report." Maryland Casualty Co. v. Sammons, 5 Cir., 1938, 99 F.2d 323.

324, certiorari denied 306 U.S. 633, 59 S.Ct. 463, 83 L.Ed. 1035.

The decision last above cited was followed and the above quoted language was approved in a case having its origin in Florida. Phoenix Indemnity Co. v. Anderson's Groves, 5 Cir., 1949, 176 F.2d 246.

The question as to whether the notice was given in proper time and the question as to whether Excess was prejudiced by the delay are generally questions of fact. However, where the facts as asserted by the assured are such that, if established, there could be no recovery; or where the undisputed facts are such that would preclude the assured's recovery, then the question becomes one of law for determination of the court and a proper matter for disposition by summary judgment. Such, we think, is the situation here. The summons, served on Greyhound, showing that $75,000 was claimed, should have suggested that perhaps one of the joint plaintiffs was asserting injuries exceeding the policy limits of the primary coverage. The declaration disclosed that this was true. The advice that plaintiffs were attempting to build up their claim should have indicated that the plaintiffs were planning to attempt recovery for a serious and substantial injury rather than a trivial one. The filing of an amended declaration increasing the ad damnum from $75,000 to $250,000 should have served as confirmation, if any were required, that there was a genuine claim made for a substantial sum in excess of the primary policy limits. We are not impressed by the argument of Greyhound that the control of the litigation was in the hands of the primary insurer and that Greyhound itself had no knowledge of the facts which would have supplied information as to the seriousness of the claim. The assured must use due diligence and follow such procedures as would inform it as to the accident and the nature and amount of the claim asserted by reason thereof. 29 Am.Jur. 835, Insurance § 1112. To be relieved of the harshness of a literal construction of "immediate notice", by the application of a rule of "reasonable time", the insured must follow a course of reasonable diligence. This Greyhound failed to do. It cannot be heard to say it did not know when it did not inquire. The attorneys who conducted the defense of the claim were its agents in the conduct of the suit and their knowledge will be imputed to Greyhound. This is so notwithstanding the fact that the attorneys were employed and paid by the primary insurer.

We hold that the reasonable man of prudence would have, somewhere along the line, and not later than the filing of the amended declaration, perhaps much sooner, have given notice to Excess. This Court has, in a case where there was an analogous factual situation, applied the rule, saying:

"That personal injuries, too, actually were sustained is evidenced by the judgments against which indemnity is sought. Notice communicated more than two years after this accident was so flagrantly violative of the provisions of the policy that the court was warranted in holding, as a matter of law, that the contract was breached by the insured." Le Sage v. Utilities Ins. Co., supra [131 F.2d 537].

It has been said that where there had been a delay of six weeks in giving notice of an accident under a policy stipulating for notice "as soon as practicable", the insured was not required to show prejudice in order to defeat liability because of non-compliance with the provision for notice. Preferred Acc. Ins. Co. v. Castellano, 2 Cir., 1945, 148 F.2d 761. We are committed to a different rule under Young v. Travelers Ins. Co., supra. The period of three weeks between the time notice to Excess was given and the time of the trial was wholly inadequate to permit Excess to investigate and exercise, if it so elected, the rights reserved to it under the policy. Such being the case, Excess was prejudiced by the delay. See Dunn v. Travelers Ind. Co., 5 Cir., 1941, 123 F.2d 710. It was

within its rights in denying liability unless it had waived or is estopped to assert the right to require notice pursuant to the policy provisions.

█ The appellant, Greyhound, insists that its allegation of a custom of Excess, known to and relied upon by Greyhound, of accepting notice when Greyhound became of the opinion that Excess might be involved, presented an issue of waiver or estoppel which should have been submitted to a jury. Supporting this position Greyhound shows that reports to Excess were made of other accidents at times ranging from ten days to more than a year after the accident. The nature of the doctrine relied upon has thus been asserted by the Supreme Court of the United States:

> "The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions. To a just application of this doctrine it is essential that the company sought to be estopped from denying the waiver claimed should be apprised of all the facts; of those which create the forfeiture, and of those which will necessarily influence its judgment in consenting to waive it." Insurance Co. v. Wolff, 95 U.S. 326, 24 L.Ed. 387.

█ "Strictly speaking, the inability of a party to an action to assert as a defense a right given by a contract does not spring from a waiver thereof, but from estoppel resulting from a waiver". Alexander v. Standard Accident Ins. Co., 10 Cir., 1941, 122 F.2d 995, 997. The effort of Greyhound to bring itself within the waiver and estoppel doctrine is based primarily upon Dickinson v. General Accident Fire & Life Assur. Corp., 9 Cir., 1945, 147 F.2d 396. There an oral notice was given within three to seven days of an accident at first believed trivial, and no objection made to the form of the notice. There was evidence of a custom, known to and relied upon by the assured, of accepting oral notices. Here we have a different situation. If it be conceded or established that Excess is estopped to require notice except when Greyhound became of the opinion that Excess might be involved (which Excess does not admit and which we need not hold), such a doctrine could not prevail here. There could have been no opinion, reasonably reached, at or perhaps prior to the increase of the demand of the injured claimants, that Excess might not have been involved. That Greyhound did not know what was transpiring does not excuse it when it should have known. It cannot be supposed that Excess intended that it should be denied notice of a claim, originally for $15,000 over the primary coverage and subsequently for $210,000 excess, for four years after the accident, ten months after the increase of the demand, and only three weeks before trial. The doctrine of waiver and estoppel cannot prevail.

We have not failed to consider the differences between primary casualty insurance and excess coverage. We are mindful of the rule of law that requires us to construe a policy of insurance most favorable to the assured.

Finding, as we do, that the judgment appealed is correct, it is

Affirmed.

CAMERON, Circuit Judge (dissenting).

The majority opinion, in my judgment, repudiates the settled law in this Circuit in its holding that this record reflects no genuine issue as to any material fact. It is my thought that genuine issues were developed as to whether Greyhound gave notice to Excess *within a reasonable time,* whether Excess was *prejudiced* by the delay, and whether Excess *waived* the giving of earlier notice.

Under an unbroken line of decisions of this Court, the granting of a summary judgment is proper only when the facts themselves are without conflict or reasonable men might not draw different inferences from such facts.[1] We have further declared that summary judgment is justified only "when it is quite clear what the truth is";[2] and, based solely upon the general atmosphere of a case involving laches, estoppel, limitations and other like defenses,[3] we sent a case back for consideration by the fact-finder, citing many cases as justifying the action. And we held summary judgment improper "where motive, intent, subjective feelings and reactions, consciousness and conscience were to be searched, and examination and cross-examination were necessary instruments in obtaining the truth."[4] Under these established principles the judgment of the Court below ought to be reversed and the case should be heard on its facts.

The basic contract between the parties was that Excess insured Greyhound against liability exceeding $40,000—100,000 limits in return for a premium Greyhound had paid Excess. The rest of the policy dealt largely with machinery for carrying out that fundamental agreement. One of the provisions of that machinery was that Greyhound should notify Excess of any accident of such seriousness as would logically lead to a claim involving Excess. The policy required "immediate" notice; but, like so many provisions of the prolix mishmash which is the average insurance policy, the courts have had to decide that the word does not mean what the dictionary says it means, and that any notice is sufficient if it is reasonable,—that is, if it is such notice as the average prudent man would give under the circumstances. There is no doubt about the holding of this Court on that point:

"It was the duty of the insured here to report the accident as soon as practicable. This does not mean that every trivial accident that occurred should be reported. An accident that an ordinarily prudent individual acting reasonably would consider, under all the circumstances, as inconsequential, and which would not afford the basis of any claim, the insured was not bound to report. * * * 'It is not every trivial mishap or occurrence that the assured under such policy of liability insurance must regard as an accident of which notice should be given immediately to the insurance company, even though it may prove afterwards to result in serious injury.' * * * That the accident in the case at bar appeared to be trivial was borne out by a *preponderance of the evidence.* * * * *The question of whether or not the notice of the accident was given the insurance company in accordance with the provisions of the policy, was one for the jury.* * * *"* [Emphasis added.][5]

In that case, the injury was to the roommate of Sammons, and he did not report the accident and the injury received by Crandall until more than fifteen months after it happened. *It should be borne in mind that the Sammons case and all of the others which will be mentioned involved notice to the primary carrier, whose liability extended to every*

1. Hawkinson Co. v. Dennis, 5 Cir., 1948, 166 F.2d 61; Winter Park Telephone Co. v. Southern Bell Telephone & Telegraph Co., 5 Cir., 1950, 181 F.2d 341; Dunnington v. First Atlantic National Bank of Daytona Beach, 5 Cir., 1952, 195 F.2d 1017.

2. Chappelle v. Goltsman, 5 Cir., 1950, 186 F.2d 215, 218, and see also Whitaker v. Coleman, 5 Cir., 1940, 115 F.2d 305, 307; Williamson v. T.S.C. Motor Freight,

Inc., 5 Cir., 1953, 203 F.2d 257, and Slagle v. United States, 5 Cir., 1956, 228 F.2d 673.

3. Hyman v. Regenstein, 5 Cir., 1955, 222 F.2d 545.

4. Alabama G. S. R. Co. v. Louisville & N. R. Co., 5 Cir., 1955, 224 F.2d 1, 5.

5. Maryland Casualty Co. v. Sammons, 5 Cir., 1938, 99 F.2d 323, 324.

*injury; while notice to Excess was proper only with respect to injuries which logically would be expected to exceed the limits mentioned.*

As stated in the majority opinion here, the requirement of immediate notice really means notice "as soon as practicable". In Callaway v. Central Surety & Insurance Corp., 5 Cir., 1939, 107 F.2d 761, 762, we held that this phrase meant within a reasonable time and that a notice which gave "ample time for a full investigation of the case" would be sufficient.

We gave the whole question full consideration in Young v. Travelers Ins. Co., 5 Cir., 1941, 119 F.2d 877, 879. There, the insured automobile and a motorcycle came into collision, resulting in the rider being injured and taken to a hospital, where he remained two months. Young, the insured, did not conceive that he could be held liable so he gave no notice to his insurer until he received a letter from a lawyer three and one-half months later. The trial Court held failure to give notice until then to be fatal, and we reversed, holding that the requirement "as written * * * is absolute in form and [that] its rigid terms have been by court construction, mitigated by importing into them, considerations of reasonable prudence * * *." What we said in that decision, 119 F.2d at page 880, concerning the necessity of showing prejudice on the part of the insured applies here:

"Here, speaking in terms of physical time, the notice could reasonably have been given sooner than it was. And, if it had been made to appear that prejudice resulted from the delay plaintiff's case would have been made out. Upon the vital question here, whether it has been prejudiced, we think the record fails to support its claim and the district judge's finding that it was. It is not found nor is it shown that by reason of the failure to give earlier notice there was a *loss of evidence or any difficulty raised up in the* *way of preparing the defense.* It is only found that 'when you take the circumstances of the delay, it probably might cause some prejudice,' in depriving the company of the opportunity to talk to the injured party before he had employed an attorney. This speculative or hypothetical prejudice is not the kind of prejudice at which the law looks in construing a clause of this kind. An obligation of the nature of that assumed by the insurer under this policy, cannot be wiped out and destroyed on such speculative grounds. The delay here viewed merely from the time standpoint was more than was reasonably necessary but it was in no sense excessive or gross. *In its nature it was one to which the doctrine of prejudice vel non has peculiar application.* There was no prejudice. The notice clause was not breached." [Emphasis added.]

It might be noted at this point that Excess not only did not show or attempt to show that it had been prejudiced, but it appeared from its answers to Greyhound's Requests for Admission that Excess peremptorily refused to recognize any liability. These answers showed that Excess did not, prior to such refusal, investigate the extent of the injuries of the plaintiffs in the Jones case, inquire concerning the names and addresses of the witnesses, examine the police accident report, discuss the case with counsel who were handling it to determine whether it had been adequately prepared for trial, or explore or determine settlement possibilities. The truth was that the case had been handled throughout by attorneys for the primary carrier and in the trial, for aught that appears to the contrary, every possible witness was produced and every reasonable effort made to defeat or diminish recovery. It is important to keep in mind that the majority opinion ignores entirely the question of prejudice holding that prejudice exists in this case as a matter of law or that prejudice need not be shown.

In other words, the effect of the holding is that Excess rightfully repudiated all obligation under its contract regardless of the facts then existing and without consideration of them.

The case of Phoenix Indemnity Co. v. Anderson Groves, Inc., 5 Cir., 1949, 176 F.2d 246, 248, is particularly interesting in view of the fact that it arose in Florida and involved a Florida insurance contract. Phoenix brought a declaratory judgment action to determine its liability in connection with an accident which was not reported until fifteen months after it occurred. The trial Court heard the evidence and found that the accident, which subsequently resulted in the amputation of a leg, "appeared of so trivial a nature that the defendant, using reasonable care could not have seen that the said claimant would have his leg amputated * * *." The Court further found that "said occurrence did not prejudice the investigation by plaintiff of the said accident nor will it be embarrassed in the defense of said cause in that the plaintiff has written statements giving the facts of said occurrence from the only two eye witnesses that were present at the time of the happening, namely, the employee of the defendant and the claimant."

Finding that this notice was a reasonable compliance with the terms of the policy and quoting from our decision in the Sammons case, supra, we held:

"Whether or not the reasonably prudent person might have regarded the accident in question of such a trivial nature as to require the giving of no notice is not a question of law *but one of fact over which the minds of reasonable men might differ.*" [Emphasis added.]

I find it impossible to reconcile our holding there with what the majority is doing here. A notice to the primary carrier delayed fifteen months is likely to be more prejudicial in its effect than notice to the excess carrier delayed several times that period. At all events, the record shows that the first intimation Greyhound had of possible danger of recovery in excess of the primary coverage was American's letter of Nov. 5, 1951 which Greyhound promptly transmitted to Excess. The majority says: We hold that the reasonable man of prudence would have, *somewhere along the line,* and not later than the filing of the amended declaration, *perhaps much sooner,* have given notice to Excess." [Emphasis added.] Do not the emphasized words show that it is recognized that reasonable men might honestly differ as to what constitutes "reasonable notice under all of the involved circumstances"?[6]

6. Here is the chronology of what transpired with respect to the Jones case. Superficially it would seem that the delay of more than four years between the accident and the notice to Excess was inordinate. But consider that nearly three years elapsed between the bringing of suit and setting it for trial. This delay on the part of the Jones was not calculated to demonstrate any great confidence on their part.

Aug. 11, 1947—Accident occurred.

Dec. 11, 1948—Suit brought and summons issued in Jones case.

Oct. , 1950—New counsel took over for Jones and little later new declaration filed increasing amounts demanded.

Oct. 15, 1951—American wrote Greyhound case set for trial Nov. 5, 1951.

Oct. 15, 1951—Greyhound notified Excess by enclosing a letter from American which stated: "All I can say is that we do not believe that Excess will be involved."

Oct. 31, 1951—Excess declined to assume any liability to Greyhound.

Was it reasonable that Greyhound notify Excess of its probable danger in the light of the meager information it had? Did the Jones case ever display such merit as to convict Greyhound of negligent or unreasonable delay in failing to evaluate it as beyond the limits of

In Home Indemnity Co. v. Williamson, 5 Cir., 1950, 183 F.2d 572, 576, this Court had before it a declaratory judgment action dealing with a situation involving failure to give notice. It rested its decision against the insurer both on the ground of failure to show prejudice and because it had waived the right to rely upon the tardiness of the notice: "The company denied all liability under the policy on the ground of the insured's alleged failure to give notice of the accident to the insurer as soon as practicable. It interposed the delay in giving notice * * * but it did not show any prejudice that had resulted to it from Coop's failure to give notice prior to the time that suit was filed against him; and the policy contains no forfeiture provision for failure to give notice '"as soon as practicable"'. This Court has said that 'they are roomy words' which 'provide for more or less free play'."

We further indicated that a liberal attitude should be followed in favor of declaring a waiver of the notice requirement so deep-seated is the universal feeling against forfeitures: "The failure of the insured to give notice of an accident may be waived by the insurer immediately after the latter has been fully informed of the occurrent facts; and the time necessary to constitute a waiver need take only a few minutes * * * We agree with the trial Court that the insurer waived the policy's requirement as to notice. * * *" Here, Excess delayed, not a few minutes, but two weeks (Oct. 15th to 31st) after being "fully informed of the occurrent facts" before announcing its decision to renounce its liability under its contract because of delay in notice. Under Williamson, supra, the question of waiver was one upon which reasonable minds might differ, considering the time element alone. Upon petition for rehearing we held that all of the questions in the Williamson case were for jury decision.[7]

Moreover, the record before us contains a very strong showing that Excess had encouraged Greyhound not to report claims unless there was a fair showing that the involvement of Excess was imminent. The reason for this is quite obvious. In my opinion, the question of waiver should have been submitted to the fact-finder along with the question of prejudice and the fundamental question of whether, in failing to give notice, Greyhound acted as a reasonably prudent person would have acted under the circumstances.

This idea is buttressed by the fact that Greyhound availed itself of its right, when sued in a declaratory judgment action by Excess, to bring in its primary insurer, American Fidelity and Casualty Co., as third party defendant. This whole complicated matter involved all three of these parties, and this is a case which makes a peculiar call to a court to dispose of all questions before one fact-finding tribunal in one trial. As shown in the majority opinion, Greyhound now

the primary carrier? Maybe reasonable men would answer those questions in the affirmative. The point is that they should be given the opportunity to do so.

7. There are no decisions from this Court which are at war with those cited. LeSage v. Utilities Insurance Co., 5 Cir., 1942, 131 F.2d 536, and Dunn v. Travelers Indemnity Co., 5 Cir., 1941, 123 F.2d 710, were both Texas decisions, and went off on the peculiar law of Texas. Before a non-reporting insured could claim good faith and reasonable care he was obligated to make an examination of the facts in order that it might be said that he was of the sincere opinion that there was not a basis for claim. In these cases no such investigation was made, and this Court held, under Texas law, that this fact was fatal to the extended delay in giving notice in those cases.

The whole question of the effect of lack of showing prejudice and its effect on the question of notice is discussed in an annotation in 18 A.L.R.2d pp. 479, et seq. It is shown that there are cases on both sides of the question, but in every instance this Court is shown as in the forefront of those holding a showing of prejudice to be requisite.

stands in litigation with the primary carrier and at a distinct disadvantage as compared to the situation which would exist if Excess were also in the case. For this reason, and also for the reason that the majority opinion ignores or repudiates the decisions above discussed, I am compelled to dissent.

Rehearing denied: CAMERON, Circuit Judge, dissenting.