**RALSTON PURINA CO., Appellant,**

v.

**The HOME INSURANCE CO., et al., Appellees.**

**No. 84–1333.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 18, 1985.

Decided May 1, 1985.

As Amended on Denial of Rehearing June 10, 1985.

Robert S. Allen, St. Louis, Mo., for appellant.

Joseph M. Kortenhof and Henry D. Menghini, St. Louis, Mo., for appellees.

Before LAY, Chief Judge, and JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Ralston Purina Company, after an adverse verdict on a products liability claim, brought this diversity action against its insurers. It claimed the proceeds under an excess insurance policy issued by The Home Insurance Company and alleged that

Hartford Accident and Indemnity Company, its primary carrier, breached its duty of good faith in failing to adequately inform Ralston that the products claim exceeded Hartford's policy limit. Judgment was entered on verdicts in favor of both defendants. Ralston argues on appeal that it was entitled to judgment against Home because Home did not prove that it was prejudiced by late notice and that it was entitled to judgment against Hartford as a matter of law because Hartford failed to keep it adequately informed of exposure in excess of the Hartford policy limits. These arguments are without merit, but Ralston is entitled to a new trial against Hartford because an instruction improperly submitted the issue of negligence in a breach of fiduciary duty claim. Accordingly, we affirm the judgment as to Home but reverse and remand for new trial as to Ralston's claim against Hartford.

In 1972, Ralston entered into insurance agreements with Home and Hartford for products liability coverage. Hartford provided primary coverage, up to $100,000 for each occurrence. Home provided excess coverage of five million dollars over the Hartford coverage. Two clauses of the Home policy are particularly significant here: a "notice of occurrence" provision requiring Ralston to notify Home when it appeared that a claim was likely to involve the policy;[1] and a cooperation provision that gave Home the right to involvement in the defense and control of claims likely to involve the policy.[2] The Hartford and Home policies expired on September 30, 1975.

On September 24, 1975, Jerry Page, a dairy farmer, received his purchase of a Ralston medicated feed product. After he used this product to treat his herd, a number of cows became sick or died. In 1977, Page filed a suit against Ralston for damages to his herd.[3] Hartford, Ralston, and outside counsel worked together in the discovery phase of the case. On May 4, 1981, the trial commenced. Two days later, Ralston notified Home's St. Louis representative of the Page claim for the first time. The next morning, May 7, the St. Louis representative contacted Home's New York office. He explained the essence of the Page claim and that the plaintiff was demanding $250,000. Hartford had made an offer of $60,000. Later that afternoon, Home was advised that Hartford was going to offer Page all of its $100,000 policy in settlement.

That same afternoon, Home sent a telex to Ralston. Reserving its rights, Home advised that it considered the late notice of the Page claim a breach of the policy. Home also stated: "As a consequence of this late notice, we have insufficient details to determine if coverage applies under said policy or to evaluate the claim." Plaintiff's Exhibit 149. Later that evening, the jury

---

1. This condition provided:

   Whenever the Insured has information from which the Insured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Insured should be held liable, is likely to involve this policy, notice shall be sent to the Company as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claim.

2. This condition provided:

   The Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Insured but The Company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves or appears reasonably likely to involve The Company, in which event the Insured and The Company shall co-operate in all things in the defense of such claim, suit or proceeding.

3. Page's original demand from Ralston was $2,750. In February 1976, however, he refused Ralston's offer to settle for this amount. Six months later, an attorney acting on Page's behalf made a formal demand to Ralston for over $71,000 and stated that Page was also suffering continuing damages of several thousand dollars per month in lost milk production. This claim was not resolved and Page filed his suit on October 14, 1977. The complaint did not specify the amount of damages sought.

returned a verdict of $689,000 in actual and punitive damages against Ralston. Hartford tendered the limits of its policy (plus costs) to the court, and Ralston settled with Page for $500,000.

In November 1982, Ralston brought this action against Home and Hartford. Ralston claimed that Home was liable on the policy for the excess of the Page settlement over the Hartford policy limit. Home defended on the grounds that it had been prejudiced by Ralston's failure to abide by the excess policy's notice provision. In the alternative, Ralston claimed that Hartford was liable because of its failure to keep Ralston advised of whether or not the Page claim would invoke the excess policy. The jury found against Ralston on both claims.

On appeal, Ralston claims three errors: failure to grant a directed verdict against Home on the grounds that Home was not prejudiced by Ralston's late notice; failure to grant a directed verdict against Hartford because of Hartford's breach of good faith in failing to properly advise Ralston of its exposure; and the failure to properly instruct the jury regarding Hartford's defense to the breach of duty claim.

### I.

Ralston claims that it was entitled to a directed verdict against Home because the excess carrier failed to prove that it was prejudiced by late notice. Based on Missouri law, the district court instructed the jury that the effect of Ralston's late notice was an affirmative defense. Thus, Home bore the burden of persuasion on whether the untimely notice prejudiced its rights.

As an excess carrier, Home's need for timely notice is distinguished from a primary carrier's requirement of prompt notice of occurrence. The excess carrier generally does not undertake to defend the insured, as is true in this case. Nevertheless, Home had the right under the policy to "be given the opportunity to associate with the Insured or the Insured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding" reasonably likely to involve Home. Ralston's delay in giving notice eviscerated the protection of this clause. Home presented evidence at trial that the late notice prevented it from confirming coverage,[4] investigating and evaluating the claim's merits, or reviewing the files of the primary insurer and its counsel. Consequently, Home argued, it was unable to respond to the Page's settlement demands before the verdict.[5]

■ We have no difficulty in concluding that a jury could have found that Home was prejudiced by the late notice. Indeed, under such circumstances courts have found prejudice as a matter of law. In *Greyhound Corp. v. Excess Insurance Co.*, 233 F.2d 630 (5th Cir.1956), the excess carrier received notice of the claim roughly three weeks before trial. The court found that such a short period was "wholly inadequate to permit the excess carrier to investigate and decide whether to exercise its rights under the policy" and held that the delay was prejudicial as a matter of law. *Id.* at 636; *cf. Offshore Logistics Services v. Arkwright-Boston Manufacturers Mutual Insurance Co.*, 469 F.Supp. 1099, 1102–03

---

**4.** At the time Home received notice, the policy in question had been expired for over five years. An officer for Home testified that, because the policy was in storage, it would have taken at least two days to even determine whether the Ralston claim arguably fell within the policy. Although the injury to Page's herd occurred around the time the policy expired, Home was justified in seeking to confirm coverage before it commenced settlement negotiations with Page. The jury could have found that such confirmation would not have been possible until after the Page jury had returned its verdict.

On appeal, Ralston argues that Home could have quickly confirmed coverage by obtaining a

copy of the policy from its St. Louis representative. This claim is not supported by any citations to the record. *See Rebuck v. Vogel,* 713 F.2d 484, 486 (8th Cir.1983). In any event, there was evidence from which the jury could have found that confirmation at such a late hour prejudiced Home's ability to investigate and settle the claim.

**5.** A Home officer testified that under the best of circumstances, Home would have required at last one week of investigation and preparation from the time of notice before it could have reasonably tried to respond to settlement demands.

(E.D.La.1979) (court declined to find prejudice where excess insurer did not even "attempt to prove" that untimely notice hampered its policy rights and notice preceded trial by six months), *modified,* 639 F.2d 1142 (5th Cir.1981).

In *Greer v. Zurich Insurance Co.,* 441 S.W.2d 15 (Mo.1969), the Missouri Supreme Court affirmed a trial court finding of prejudice because of delay in notice and pointed to testimony concerning the primary insurer's "procedures employed in preliminary investigation * * *, the selection of trial counsel and the possibility of settlement prior to judgment." *Id.* at 32. This evidence is similar to that introduced by Home. Ralston argues that Home cannot rest simply on "lost opportunity" evidence but must demonstrate what it would have done had it received timely notice. The holding in *Greer* is a complete answer to Ralston's argument. Thus, the district court did not err in refusing Ralston's motion to direct a verdict against Home.

## II.

■ Ralston then claims as a matter of law that Hartford breached its fiduciary duty to Ralston by failing to promptly and adequately inform Ralston that the excess carrier should be notified. There was evidence from which the jury could have found that Hartford gave Ralston timely notice of the excess nature of the claim. C. Dexter Powers, an attorney Hartford had hired to represent Ralston in the Page case, had frequent communications with August Ottinger, division counsel for Ralston's Agri-Products Division. Powers testified that on April 8, 1981 (roughly one month before trial), he discussed with Ottinger an expert deposition in the Page case. Page's expert, William Northern, had stated in the deposition that the defective feed had cost Page $389,000 in lost milk production. Powers testified that he was "certain" that he discussed with Ottinger an exhibit that documented this claim. In addition, Powers sent Ottinger a letter on April 8 and included the exhibits

introduced at the Northern deposition. On April 29, Powers sent Ottinger a transcript of the Northern deposition itself. This evidence shows that more than a week before trial [6] a Ralston lawyer had at least some knowledge that the Page claim could exceed the $100,000 coverage of the Hartford policy.

Ralston claims that this notice was inadequate because Powers did not explicitly tell Ottinger that Ralston should notify its excess carrier. In addition, it argues that Hartford had the responsibility to notify Ralston's insurance department rather than an attorney in the Agri-Products Division. The jury was instructed that Ralston was required to show more than that Hartford gave inadequate notice to Ralston; Hartford would be liable only for dealing with a lack of good faith. The evidence was sufficient to raise an issue for the jury as to whether Hartford failed to deal fairly and honestly with Ralston in notifying it of the potential dimensions of the Page claim. Moreover, the jury could have found that the notice to Ottinger should be imputed to Ralston. *See Greyhound,* 233 F.2d at 636.

## III.

■ Finally, Ralston urges that the district court erred in instructing the jury that Ralston's negligence was a defense to a claim of breached fiduciary duty.

The instruction, submitted by Hartford, provided:

Your verdict must be for defendant Hartford on plaintiff's claim for damages if you believe:

FIRST, plaintiff was in possession of documents outlining the extent of the Page claim approximately one month before the start of trial on the Page claim, and

SECOND, plaintiff failed to notify the Home Insurance Company of the information set forth in said documents and was thereby negligent, and

THIRD, such negligence of plaintiff directly caused any damage plaintiff may have sustained.

---

**6.** The one-week period is significant because that time could have been sufficient for Home to exercise its rights under the excess policy. *See* note 5 *supra.*

This instruction essentially requires a verdict for Hartford if the jury finds that Ralston was negligent in failing to notify its excess carrier. Ralston objected to this instruction on the grounds that negligence is not a defense to a breach of fiduciary duty. Our review is limited to determining whether the charge as a whole fairly and adequately stated the applicable law. *See Chohlis v. Cessna Aircraft Co.*, 760 F.2d 901, 904 (8th Cir.1985).[7] The only issue here is whether the instruction had a basis in Missouri substantive law.

In *American Mortgage Investment Co. v. Hardin-Stockton Corp.*, 671 S.W.2d 283 (Mo.Ct.App.1984), a similar issue was discussed. Hardin-Stockton acted as a real-estate broker for American, the principal, a seller of property. The relationship between the parties was found to be "confidential and fiduciary," *id.* at 290, much like the dealings between an insurer and an insured, *see Craig v. Iowa Kemper Mutual Insurance Co.*, 565 S.W.2d 716, 723 (Mo.Ct.App.1978). Hardin-Stockton had contended that it was not liable for the loss of some sale proceeds because of American's negligence in failing to take action following the closings. In reviewing an affirmative defense instruction given to that effect, the court of appeals held that "there is no support in the substantive law allowing the defense of contributory negligence to act as a complete bar to the recovery by a principal as against his agent upon a claim for breach of fiduciary duty." 671 S.W.2d

at 292. Rather, negligence goes only to mitigation of damages. *Id.*[8]

Under *American Mortgage* negligence is not a complete defense to a claim for breach of fiduciary duty, but the instruction directs a verdict for Hartford based on such a finding of negligence. The instruction tendered by Hartford is thus contrary to Missouri substantive law.[9] Ralston is entitled to a new trial against Hartford. If, on remand, an instruction on negligence is requested, it may relate only to the issue of mitigation of damages.

The judgment is affirmed as to Home and reversed and remanded as to Hartford.

---

**7.** Hartford argues that the instruction is not a contributory negligence instruction but an affirmative converse instruction as denominated in Missouri instruction procedures. This dispute is not material. Regardless of how an instruction is characterized under state procedural law, it is improper if it does not accurately set forth the underlying substantive law. Hartford also argues that this instruction only conversed the issue of causation. Hartford's argument is over-restrictive in its reading of the instruction, which plainly placed before the jury the issue of Ralston's negligence.

**8.** In fairness to the district court, we note that this case was tried before *American Mortgage* was decided. *American Mortgage* did, however, rely on *McMurray v. Garnett*, 182 S.W. 128, 130 (Mo.Ct.App.1915), where the court held that an

agent could not assert negligence against a principal in an action based on breach of fiduciary duty.

**9.** Hartford argues that *American Mortgage* is distinguishable because the instruction there (which used the phrase "directly contributed") was a contributory negligence instruction. It urges that the district court's deletion of the phrase "or directly contributed" from the third paragraph of the instruction here converted it to an affirmative converse instruction. This distinction is too fine. The argument that there is a difference between "directly contributed to cause" and "directly caused" in this context is unconvincing. *See* Missouri Supreme Court Committee on Jury Instructions, *Missouri Approved Instruction* No. 32.01(2) (3d ed. 1981) (implicitly equates "directly caused" with "directly contributed to").