**HARBOR INSURANCE COMPANY, Plaintiff-Counterclaim, Defendant-Appellee,**

v.

**TRAMMELL CROW COMPANY, INC., and Chasewood Construction Company, Defendants-Counterclaim, Plaintiffs-Appellants.**

**No. 87–1876.**

United States Court of Appeals, Fifth Circuit.

Sept. 6, 1988.

---

**8.** There are several methods to prove a person is uninsured. *See* La.Rev.Stat.Ann. § 22:1406 (D)(6) (West 1978).

Michael V. Powell, Karen F. Gray, Timothy E. Kelley, Dallas, Tex., for defendants-counterclaim, plaintiffs-appellants.

P. Michael Jung, Dallas, Tex., for plaintiff-counterclaim, defendant-appellee.

Before REAVLEY, JOHNSON and JONES, Circuit Judges.

REAVLEY, Circuit Judge:

Harbor Insurance Company ("Harbor") brought this declaratory judgment action against Trammell Crow and the Chasewood Construction Company (collectively "Chasewood") seeking a declaration that it was not liable to Chasewood under an excess liability policy. Chasewood filed a counterclaim against Harbor seeking contractual and exemplary damages. The district court granted Harbor's motion for summary judgment and awarded attorneys' fees to Harbor. Holding that a genuine issue of material fact exists, we reverse and remand.

### I

The controversy is over Harbor's liability to Chasewood on an excess insurance policy (the "policy"). Chasewood's primary insurance carrier was United States Fire Insurance Company ("U.S. Fire"), which provided coverage up to $500,000. Harbor's policy provided excess coverage at levels above $500,000. While Harbor contends that it is not liable because Chasewood did not provide it with timely notice [1] of a suit filed against Chasewood in which the damages sought exceeded $500,000, Chasewood contends that timely notice was provided.

In 1981 Chasewood, a general contractor, entered into subcontracts with the Rico Construction Company ("Rico") which provided that Rico would perform the framing and trim work on an apartment complex in San Antonio. Due to deficiencies in performance and allegations that Rico employees had been stealing materials from the job site, Chasewood terminated its subcontracts with Rico in December 1981.

---

1. The policy requires Chasewood to provide notice to Harbor "as soon as practicable" when Chasewood "has information from which [it] may reasonably conclude that an occurrence covered [under the policy] involves injuries or damages which, in the event that [Chasewood] should be held liable, is likely to involve this policy." *See infra* text at heading II.

On May 17, 1982, Rico filed suit against Chasewood alleging breach of contract and seeking $50,000 in damages (the "San Antonio action"). In November 1982, Rico filed a first amended complaint alleging that its reputation had been impaired by Chasewood's termination, and in May 1983, in response to Chasewood's discovery requests, Rico alleged damages of at least $300,000 for loss of reputation, integrity and standing in the community. Chasewood notified its primary insurance carrier, U.S. Fire, which, in turn, retained a prominent San Antonio attorney to defend Chasewood against Rico's loss of reputation claim.

On June 9, 1983, Rico filed a second amended complaint in which it characterized Chasewood's conduct as libelous and slanderous and increased its prayer for actual damages to "in excess of $500,000" and requested $1,000,000 in punitive damages. After filing numerous additional amended complaints, Rico filed a seventh amended complaint on August 29, 1983, in which it increased its request for punitive damages to $2,000,000.

On September 22, 1983, the jury in the San Antonio action returned a $2,487,000 verdict in favor of Rico, which included $650,000 in actual damages and $1,750,000 in punitive damages on Rico's libel and slander claim. After remitting $250,000 of the punitive damage award, the state district court entered judgment for Rico on September 26, 1983, which judgment was later affirmed on appeal. On September 27, Chasewood provided Harbor with the first written notice of the adverse judgment. On the following day, Harbor advised Chasewood that it was reserving its rights under the policy.

## II

On February 2, 1984, Harbor filed this action against Chasewood seeking a declaratory judgment that it had no obligation to Chasewood under the policy and for reasonable attorney's fees. Chasewood filed a counterclaim against Harbor seeking $1,656,372.66 on the policy, $5,000,000 in exemplary damages, and $150,000 in attorney's fees.

On January 16, 1987, Harbor filed a motion for summary judgment, contending that it was not liable under the policy because Chasewood failed to provide it with timely notice of the San Antonio action. The policy's notice provision specifies that

> Whenever [Chasewood] has information from which [it] *may reasonably conclude* that an occurrence covered [under the policy] involves injuries or damages which, in the event that [Chasewood] should be held liable, is *likely* to involve this Policy, notice shall be sent ... *as soon as practicable*, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

(emphasis added). The policy also provides that while Harbor does not have the right to assume the defense of suits against Chasewood, it has the right "to associate with [Chasewood] or [Chasewood's] underlying insurer, or both, in the defense and control of any claim ... where the claim ... involves, or appears reasonably likely to involve [Harbor]."

Responding to Harbor's motion, Chasewood asserted that its duty to provide Harbor with notice of the San Antonio action was not triggered until the jury's adverse verdict was returned on September 22, 1983, because prior to that point it did not possess information from which it could *reasonably conclude* that the San Antonio action would *likely* involve the policy. To support its position, Chasewood introduced numerous excerpts from depositions taken from attorneys involved in the San Antonio action which expressed the opinion, held throughout trial and until the verdict was returned, that Rico's defamation claim was meritless and that Rico's claims would not result in a judgment exceeding $500,000. Chasewood concluded that summary judgment was not appropriate because there were genuine issues of material fact concerning when its duty to provide notice

arose and whether notice was provided "as soon as practicable" under the policy. Alternatively, Chasewood contended that Texas law required Harbor to establish that the lack of timely notice resulted in prejudice and that Harbor failed to make this showing.

In an order filed September 14, 1987, the district court granted Harbor's motion for summary judgment. The court first held that compliance with the notice provision is a condition precedent to liability, and that issues concerning the timeliness of notice and prejudice to an insurer are generally questions of fact. *See, Greyhound Corp v. Excess Ins. Co. of Am.*, 233 F.2d 630, 636 (5th Cir.1956). The court then pointed out that where the facts asserted by the insured, if established, preclude recovery, or where undisputed facts preclude recovery, the question becomes one of law for determination by the court. *See id.* Applying the latter rule, the court held that by August 10, 1983,[2] a reasonably prudent person in Chasewood's position, taking all facts and defenses into consideration, would have considered a judgment in excess of $500,000 likely. To support this conclusion, the district court noted that by August 10 Chasewood knew that: (1) Rico's attorney in the San Antonio action was "very able and experienced"; (2) Bexar County juries had awarded verdicts in excess of $500,000 to plaintiffs in libel and slander cases; and (3) Rico's attorney had been successful in obtaining verdicts from Bexar County juries in excess of $500,000. The district court did not discuss any summary judgment evidence favorable to Chasewood's position.[3]

The court, using the August 10 date as a basis, then held that the September 26 provision of notice was not given "as soon as practicable" under the policy. In response

to Chasewood's contention that Harbor must establish that it was prejudiced by the untimely notice, the court held that Texas law did not require this showing and that, in any event, Harbor had established prejudice.

On September 30, 1987, the district court, pursuant to the parties' consent, referred Harbor's claim for attorney's fees to a magistrate for resolution and entered an interlocutory judgment (on Harbor's motion for summary judgment) pending resolution of the attorney's fees claim. On October 21, 1987, final judgment was entered awarding attorney's fees to Harbor in the amount of $67,747.50. Chasewood timely appealed this judgment.

■ Citing *Budinich v. Becton Dickinson & Co.*, — U.S. —, 108 S.Ct. 1717, 1720–22, 100 L.Ed.2d 178 (1988), for the proposition that a decision on the merits is "final" for purposes of appeal regardless of whether a request for attorney's fees remains for adjudication, and noting that Chasewood's notice of appeal was not filed within 30 days of the district court's entry of the interlocutory judgment (granting Harbor's summary judgment motion), Harbor contends that we are without jurisdiction to decide this appeal. We reject this contention because, while the district court's judgment did dispose of the merits, it was labeled "interlocutory" and specifically provided that "this Judgment is an Interlocutory Judgment only." We find nothing in the Supreme Court's writing to remove the district court's control of the case and transform its interlocutory order into a final judgment when the latter court chooses to render its final judgment after resolving the attorney's fee issue. Chasewood properly filed notice of appeal from the final judgment.

---

**2.** By August 10, Rico had amended its complaint to allege defamation and had increased its damage request to "in excess of $500,000" in actual damages and $1,000,000 in punitive damages. Discovery had also been completed by this date.

**3.** One factor that apparently influenced the court's decision was an admission by Chasewood that by June 1983, based on the pleadings in the San Antonio action, it had information from which it could reasonably conclude that

Rico was making a claim which, if proven, would involve the policy. We interpret this admission to mean only that by June 1983, Chasewood was aware that Rico was seeking more than $500,000. This interpretation is supported by the fact that Chasewood did *not* admit that Rico's claims were provable, but instead only admitted that if these claims were proven they would involve the policy.

Chasewood contends that the district court improperly entered summary judgment because a genuine issue of material fact exists concerning when its duty to provide notice to Harbor arose. Chasewood also contends that the district court incorrectly found that Harbor was prejudiced and improperly held that Texas law does not require Harbor to establish prejudice. Finally, Chasewood contends that the district court improperly awarded attorney's fees to Harbor.

We do not reach Chasewood's contentions concerning prejudice and attorney's fees because we hold that summary judgment was improperly granted on the issue of when Chasewood's duty to notify Harbor arose.

## III

■■■ Summary judgment is proper only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Harbor, as the moving party, had the burden to show that no genuine issue of material fact existed. If this burden was successfully discharged by Harbor, then the burden shifted to Chasewood to counter Harbor's evidence with proof that a genuine issue existed for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985), 762 F.2d 1004 (5th Cir.1985). All reasonable factual inferences from the record must be resolved in favor of the nonmovant, Chasewood. *Galindo*, 754 F.2d at 1216. We are governed by these principles on appeal. *Id.*

■■■ Chasewood's summary judgment evidence precludes us from holding that, as a matter of law, the duty to provide notice arose on August 10, 1983. The excess policy required that Chasewood notify Harbor "as soon as practicable" after Chasewood had information from which it "may reasonably [have] conclude[d]" that injuries or damages were likely to involve the policy. The district court had before it summary judgment evidence which showed that: (1) Chasewood's attorneys in the San Antonio action believed that defenses of limitations and lack of publication would prevent Rico's slander claim from going to the jury; (2) Rico's reputation had declined before the alleged slanderous remarks were made by Chasewood, thus leading Chasewood's attorneys to conclude that even if the remarks harmed Rico's business, damages for loss of reputation would not be significant; (3) Chasewood's attorneys never believed that Rico's claims would result in a judgment approaching $500,000; (4) U.S. Fire's (the primary insurer) best estimate of its potential liability never exceeded $25,000; and (5) Rico's only settlement offer was for $350,000, and Chasewood's only settlement offer was for $30,000, both of which fell well below the $500,000 excess policy limit threshold.

This evidence clearly suggests that, until September 22, 1983, when the jury returned its verdict, a reasonably prudent person in Chasewood's position may have concluded that the potential damages in the San Antonio action were not likely to involve Harbor's policy. While Harbor introduced, and the district court relied upon, evidence to suggest otherwise, we cannot say that a genuine issue of material fact did not exist on this issue. Our conclusion is supported by *Trustees of Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890 (3d Cir. 1987), a case involving identical policy language in which, on the issue of timely notification by an insured to its insurer of a prior action, the jury found for the insured under circumstances comparable to those presented on this appeal. *Id.* at 895.

Harbor does not attack Chasewood's summary judgment evidence, but instead contends that under two alternate interpretations of the policy's notice provision either all or some of Chasewood's evidence should not be considered. Harbor first argues that the notice provision required Chasewood to provide notice when it possessed information from which it could reasonably conclude that injuries or damages involving the policy were likely *"in the event that [Chasewood] should be held liable."* Harbor construes this provision to mean that, in determining the likelihood

that injuries or damages will involve the policy, Chasewood is not permitted to take into consideration any doubts about whether liability will be imposed but must instead assume liability. Based on this interpretation, Harbor contends that Chasewood's summary judgment evidence concerning its attorneys' belief that liability would not be imposed on Rico's libel and slander claim, is irrelevant to the notice issue and should not be considered.

Under Texas law, it is well settled that insurance policies are to be liberally construed in favor of the insured and strictly against the insurer, especially when exceptions and words of limitation are involved. *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976). Texas courts apply the construction which favors the insured and permits recovery when the language of a policy is susceptible to more than one reasonable interpretation. *Id.* If not unreasonable, the insured's interpretation controls. *Ideal Mutual Ins. Co. v. Last Days Evangelical Ass'n,* 783 F.2d 1234, 1238 (5th Cir.1986) (relying on *Continental Casualty Co. v. Warren,* 254 S.W. 2d 762, 763 (Tex.1953)).

Applying these principles, we find Harbor's construction untenable because it reads out the remainder of the notice provision, which specifies that "failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy but which at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims." Taking this language into account, Chasewood interprets the provision to mean that it must consider the possibility of liability, as well as the potential amount of damages, when assessing the likelihood that injuries or damages will involve the policy. We cannot say that this construction is unreasonable. Even if it were, a genuine issue of material fact would still exist because Chasewood's remaining summary judgment evidence includes the statements by the Chasewood attorneys that, until the jury returned its verdict in the San Antonio action, they did not believe that a judgment exceeding $500,000 was likely. For summary judgment purposes we assume their credibility.

Noting that the policy requires Chasewood to notify Harbor when it *"has information from which* [it] *may reasonably conclude ...,"* Harbor contends that all of Chasewood's summary judgment evidence is irrelevant to the notice issue because, based solely on the evidence considered by the district court (Harbor's summary judgment evidence), Chasewood had sufficient information by August 10, 1983, to reasonably conclude that its duty was triggered. In other words, Harbor interprets the policy to require notice whenever Chasewood has information sufficient to implicate coverage, even though Chasewood may possess other contrary information which suggests that its duty has not been triggered. We regard that reading of the policy as tortured.

Chasewood interprets the policy to mean that its duty to provide notice arises when a reasonable person, viewing *all* available facts and information, would conclude that an award implicating the policy is likely. We conclude that this interpretation is reasonable, and accordingly hold that all information known to Chasewood during the San Antonio action is relevant to the notice issue.

Harbor's proposed interpretations of its policy would virtually require that Chasewood provide it with notice whenever a claim exceeding $500,000 was filed against Chasewood. The phrase "may reasonably conclude" and the term "likely," as used in the policy, do not support this result. Harbor could have drafted its policy language narrowly to obtain the result it now seeks to impose, but did not do so. *See Members Mutual Ins. Co. v. Cutaia,* 476 S.W.2d 278, 278 (Tex.1972) (policy requiring insured to notify insurer of "any" accident); *Greyhound,* 233 F.2d at 632 (policy requiring insured to notify insurer of "any accident which may involve [insurer's] liability").

Because we hold that a genuine issue of material fact exists concerning when Chasewood's duty to notify Harbor arose under the policy, we reverse the district

court's entry of summary judgment and remand for further proceedings.

REVERSED and REMANDED.