Betty F. **RODGERS** and Robert E. **"Buck" Rodgers, Appellees,**

v.

**MISSOURI INSURANCE GUARANTY ASSOCIATION, Appellant.**

No. 87–1454.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1987.

Decided March 14, 1988.

Rehearing Denied April 7, 1988.

**859**

Gerre S. Langton, St. Louis, Mo., for appellant.

Roger J. Schuber, Sedalia, Mo., for appellees.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The Missouri Insurance Guaranty Association [1] (MIGA) appeals from an adverse judgment based on Betty F. and Robert E. "Buck" Rodgers claims against Sheriff Robert Crenshaw. The Rodgers' suit resulted in the entry of an uncontested summary judgment in the amount of $100,000

being entered against Crenshaw. Due to the insolvency of Crenshaw's insurance carrier, the Rodgers filed a claim with MIGA, which refused to pay the claim, and this declaratory judgment action followed. On appeal, MIGA contends that the district court erred in concluding that the judgment represented a "covered claim" which MIGA was statutorily obligated to pay, 656 F.Supp. 902 (E.D.Mo.1987). We conclude MIGA's contention is valid and reverse the judgment of the district court.

The Rodgers filed a civil action for damages arising from the repossession of two of their cars. The suit originally named as defendants the Osage Valley Bank, two of its officers and the deputy of Benton County, Roy Gray. After settling their claims against the bank and its officers, the Rodgers filed an amended complaint alleging that Crenshaw participated in the repossession and naming him as a defendant. Crenshaw contacted the National Sheriff's Association, which had obtained an insurance policy for him from the Ideal Mutual Insurance Company of New York (Ideal), informing it of the suit. The Sheriff's Association notified Crenshaw that Ideal was in receivership and about to be declared insolvent and that he should arrange for defense of the suit. The Association also informed him that the state insurance commissioner could advise him of the proper procedure to secure reimbursement of the costs in defending the suit. Although the date is not clear, the National Sheriff's Association sent a form acknowledgment of the lawsuit to the Rodgers' attorney indicating that the information was being sent to Mr. Paul Dygard of MIGA.

Crenshaw hired Karen Coffee Woodley, prosecuting attorney of Benton County, to defend him in the Rodgers' action. She wrote to the Missouri Division of Insurance concerning the status of Ideal and received a reply informing her that Ideal was about to be declared insolvent. [2] Woodley sent a

1. The Missouri Guaranty Act established MIGA, a quasi-public corporation, which provides limited benefits to holders of insurance policies issued by insurers which have become insolvent and are unable to pay valid claims arising out of

covered events in Missouri. *Pritchett v. Clifton*, 738 F.2d 319, 320 (8th Cir.1984) (en banc).

2. On February 7, 1985 the Supreme Court of New York revoked the order of receivership and declared Ideal insolvent. No issue is raised

copy of this letter to the chairman of the board of MIGA, who routinely sent such communications to Mr. Dygard.

On May 20, 1985 one of the Rodgers' lawyers, Roger Schuber, called MIGA and spoke to Mr. English, a claims representative. Schuber testified that he informed English about the Rodgers' suit and to the best of his recollection, informed English of a summary judgment motion which was to be heard in three days. He requested information regarding the procedure for filing a claim and English told him that the claim forms would be sent. On the same day a copy of the summary judgment motion was directed to Woodley.

Three days later, the summary judgment motion was presented to Judge Scott O. Wright of the Western District of Missouri. Crenshaw's reply to the summary judgment motion, prepared by Woodley, conceded that there was no genuine issue as to any material fact, waived the untimeliness of the motion, and stated that the defendants had no "idea as to the dollar value of plaintiffs' claim." A release attached to the motion, signed by Ms. Woodley on behalf of Crenshaw, allowed plaintiffs to take judgment against Crenshaw in the amount of $100,000 with the understanding that plaintiffs would not attempt to satisfy the judgment against Crenshaw. It further recited that Crenshaw would cooperate fully and assist plaintiffs in their attempt to collect the judgment from any other source. Based on these filings, Judge Wright entered summary judgment against Crenshaw in the amount of $50,000 for each of the Rodgers.

On June 3, 1985 MIGA received a notice of claim sent by the Rodgers' counsel. After MIGA denied payment on the claim, the Rodgers filed this declaratory judgment ac-

tion in the Eastern District of Missouri. MIGA pleaded as an affirmative defense that a claim based on the uncontested summary judgment was not a covered claim as that term is used in the Missouri Guaranty Act, Mo.Rev.Stat. § 375.785 (1986). Conditions of the Ideal policy prohibited an insured from entering into a release without the consent of the insurer and also required liability to be determined by either judgment after an actual trial or pursuant to a written agreement between the claimant, insured and insurer. MIGA claimed that Crenshaw, by entering into a release with the Rodgers, failed to comply with the policy conditions, and therefore the claim is not "within the coverage of an insurance policy" as required by Mo.Rev.Stat. § 375.785.3(2) (1986).[3]

The district court heard the case in a bench trial and determined that the judgment represented a covered claim which MIGA was statutorily obligated to pay to the extent the judgment represented actual damages, which the court determined to be $66,666.66. The district court did not specifically deal with the affirmative defenses advanced by MIGA.[4]

Section 375.785.4(1)(b) provides that MIGA shall "[b]e deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all rights, duties, and obligations, of the insolvent insurer as if the insurer had not become insolvent." In determining whether the judgment represents a covered claim, we are guided by the recent case of *King Louie Bowling Corp. v. Missouri Ins. Guar. Ass'n*, 735 S.W.2d 35 (Mo.Ct.App. 1987). *King Louie Bowling Corp.*, decided after the district court's consideration of this case, closely parallels the facts of this

concerning Ideal's insolvency or status as a member insurer of MIGA.

**3.** Section 375.785.3(2) of the Missouri Guaranty Act defines "covered claim" as:

an unpaid claim, including those for unearned premiums, presented within the time specified in accordance with subsection 1 of section 375.670, and which arises out of and is within the coverage of an insurance policy to which this section applies issued by a member

insurer, if such insurer becomes an insolvent insurer after September 28, 1971, and the claimant or insured is a resident of this state at the time of the insured event; or * * *.

**4.** MIGA also contended that the summary judgment action was not preclusive in this action because it had no notice of the summary judgment action and because Crenshaw had not filed a claim with MIGA requesting defense of the Rodgers' suit.

case and requires us to reverse the judgment of the district court.

King Louie obtained an insurance policy from Proprietors Insurance Company insuring King Louie for amounts it became liable to pay in consequence of injuries sustained by third parties on its premises. Two patrons fell in separate incidents and made claims against King Louie. Proprietors investigated the claims, and when suits were later filed, assumed the defense. Before either claim was settled or concluded, Proprietors became insolvent.

After Proprietors' insolvency, King Louie settled the claims, paying a total of $12,000 to the claimants. King Louie then filed claims with MIGA to recoup the payments. MIGA rejected the claims and King Louie brought an action against MIGA seeking a declaration of rights and duties under the Insurance Guaranty Act and reimbursement of the settlement payments.

Despite the fact that the claims were otherwise within the liability policy issued by the defaulting insurer, the court concluded that the claims did not constitute covered claims. The Proprietors policy only insured King Louie for those sums in which King Louie became legally obligated to pay and since the suits were voluntarily settled, there was no assessment of King Louie's legal obligation. The court reasoned that if Proprietors had survived as a solvent insurer, King Louie could not have pursued claims based on voluntary settlements, and therefore the court concluded that it was similarly barred from recovering the amounts from MIGA.

Similar to the Proprietors policy, the Ideal policy provided:

---

**5.** Mo.Rev.Stat. § 537.065 (1986) provides that a claimant and an insured may enter into a release whereby the claimants, in consideration of a specified sum, agree not to levy execution against the insured personally. However, § 375.785 applies only to unliquidated claims arising out of bodily injuries or death, and so is not applicable to the facts of this case.

**6.** In addition, Condition A of the Ideal policy provides: "In the event of a claim occurring likely to involve the company hereunder, the insured shall not make any payment, assume

N. No action shall be against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor *until* the amount of the insured's obligation to pay shall *have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.* Any person or organization or the legal representatives thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. [Emphasis added]

Under the insurance agreement between Ideal and Crenshaw, as quoted above, the insurer is not required to cover any liability of the insured until that liability is determined by either: (1) a judgment after an actual trial or (2) a written agreement of the insured, claimant and the company. Neither of these events occurred here.[5] While a judgment was entered, it is evident that there was no actual trial. And although there was a written agreement between the insured and the claimant, no party that could be deemed "the company," either Ideal or MIGA, participated.[6]

It is true, as the Rodgers contend, that an insured may be released from a policy condition prohibiting the insured from incurring expenses and negotiating or settling claims when the insurance company refuses to defend an insured under a liability policy. *See, e.g., United States Fidelity & Guar. Co. v. Safeco Ins. Co.,* 522 S.W.2d 809, 819–20 (Mo.1975) (en banc); *Butters v. City of Independence,* 513 S.W.2d 418, 425 (Mo.App.1974). However, the insured is

any liability, incur any expense without the consent of the company first being obtained." The policy further provides that compliance by the insured with all the terms and conditions of the policy is a condition precedent to any liability of the company. Crenshaw, by entering into the release without MIGA's consent, failed to comply with all the terms and conditions of the Ideal policy; relieving Ideal, and in turn MIGA, of any liability under the policy. *King Louie Bowling Corp.,* 735 S.W.2d at 39–40.

released only after he has requested his insurer to assume his defense and is refused. *Holiday Inns v. Thirteen–Fifty Inv. Co.*, 714 S.W.2d 597, 603 (Mo.Ct.App. 1986). Here, there is no allegation that MIGA refused to assume Crenshaw's defense. Indeed, the record reveals that MIGA was notified of the summary judgment action, by the Rodgers' counsel, only three days before the entry of judgment against Crenshaw. MIGA did not have a reasonable opportunity to defend the summary judgment motion and therefore cannot be bound by it. *Cf. Lane v. Hartford Fire Ins. Co.*, 343 F.Supp. 79, 82–85 (E.D. Mo.1972). *See also Ralston Purina Co. v. Home Ins. Co.*, 760 F.2d 897, 899 (8th Cir. 1985) (excess insurer prejudiced by insured's late notice of potential claim under insurance policy and therefore not obligated to provide coverage).

The claim is not within the Ideal policy and is therefore not a covered claim in which MIGA is statutorily obligated to pay. Mo.Rev.Stat. § 375.785.3(2). Accordingly, we reverse the judgment of the district court, and remand with instructions that it enter judgment for MIGA on the Rodgers' claim.